FILED

1   ERIKA A. KELTON (SBN 133300)
       ekelton@phillipsandcohen.com
2   PHILLIPS & COHEN LLP
    100 The Embarcadero, Suite 300
3   San Francisco, CA 94105
    Tel:  (415) 836-9000
4   Fax:  (415) 836-9001

5

6   Attorney for *Qui Tam* Plaintiff
    [UNDER SEAL]

7

8

9                    UNITED STATES DISTRICT COURT
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
10                         WESTERN DIVISION            **BY FAX**

11

12  UNITED STATES OF AMERICA          Case No:
    *ex rel.* [UNDER SEAL],
                                      **CV18-09333**-RSWL(PLAx)
13                      Plaintiff,
                                      **COMPLAINT**
14        v.
                                      **FILED IN CAMERA AND UNDER**
15  [UNDER SEAL],                     **SEAL PURSUANT TO 31 U.S.C.**
                                      **§3730(b)(2)**
16                      Defendants.

17

18

19

20              **DOCUMENT TO BE KEPT UNDER SEAL**

21                 **DO NOT ENTER ON PACER**

22

23

24

25                    PAID                      PAID

26              OCT 3 1 2018              OCT 3 1 2018

27           Clerk, US District Court   Clerk, US District Court
                   COURT 4612                 COURT 4612
28

                            -1-
587256 1                 **COMPLAINT**
587256.2

1   ERIKA A. KELTON (SBN 133300)
      ekelton@phillipsandcohen.com
2   PHILLIPS & COHEN LLP
    100 The Embarcadero, Suite 300
3   San Francisco, CA 94105
    Tel:  (415) 836-9000
4   Fax:  (415) 836-9001

5

    Attorney for *Qui Tam* Plaintiff
6   MATTHEW WEBSTER

7

8                  UNITED STATES DISTRICT COURT
9          FOR THE CENTRAL DISTRICT OF CALIFORNIA
                        WESTERN DIVISION
10

11
    UNITED STATES OF AMERICA          Case No:
12  and the STATES OF CALIFORNIA,
    COLORADO, CONNECTICUT,
13  DELAWARE, DISTRICT OF
    COLUMBIA, FLORIDA,               **COMPLAINT FOR VIOLATIONS OF**
14  GEORGIA, HAWAII, ILLINOIS,       **THE FEDERAL FALSE CLAIMS ACT**
    INDIANA, IOWA, LOUSIANA,         **[31 U.S.C. §§ 3729 et seq.];**
15  MARYLAND, MASSACHUSETTS,         **CALIFORNIA FALSE CLAIMS ACT**
    MICHIGAN, MINNESOTA,             **[Cal. Gov't Code §§ 12650 et seq.];**
16  MONTANA, NEVADA, NEW             **CALIFORNIA INSURANCE FRAUDS**
    JERSEY, NEW MEXICO, NEW          **PREVENTION ACT [Cal. Ins. Code §**
17  YORK, NORTH CAROLINA,            **1871.7]; COLORADO MEDICAID**
    OKLAHOMA, RHODE ISLAND,          **FALSE CLAIMS ACT [Colo. Rev. Stat.**
18  TENNESSEE, TEXAS, VERMONT,       **§§ 25.5-4-303.5 et seq.];**
    VIRGINIA, WASHINGTON, and        **CONNECTICUT FALSE CLAIMS**
19  the CITY of CHICAGO *ex rel.*    **ACT [2014 Conn. Acts 14-217];**
    MATTHEW WEBSTER,                 **DELAWARE FALSE CLAIMS AND**
20                                   **REPORTING ACT [Del. Code Ann. tit.**
                 Plaintiff,          **6, §§ 1201 et seq.]; DISTRICT OF**
21                                   **COLUMBIA FALSE CLAIMS ACT**
         v.                          **[D.C. Code Ann. §§ 2-381.01 et seq.];**
22                                   **FLORIDA FALSE CLAIMS Act [Fla.**
    BIOMATRIX HOLDINGS, LLC,         **Stat. Ann. §§ 68.081 et seq.]; GEORGIA**
23  BIOMATRIX SPECIALTY              **TAXPAYER PROTECTION AGAINST**
    PHARMACY, LLC D/B/A              **FALSE CLAIMS ACT [Ga. Code Ann.**
24  BIOMATRIX, FFP HOLDCO, LLC       **§§ 23-3-120 et seq.]; GEORGIA FALSE**
    D/B/A MATRIX HEALTH GROUP,       **MEDICAID CLAIMS ACT [Ga. Code**
25  FACTOR SUPPORT NETWORK,          **Ann. §§ 49-4-168 et seq.]; HAWAII**
    FFP ACQUISITION II, LLC D/B/A    **FALSE CLAIMS ACT [Haw. Rev. Stat.**
26  MEDEX BIOCARE, BIOLOGICTX,       **§§ 661-21 et seq.]; ILLINOIS FALSE**
    ELWYN PHARMACY GROUP,            **CLAIMS ACT, [740 Ill. Comp. Stat.**
27  LLC, ELWYN PHARMACY, GLEN        **175/1 et seq.]; ILLINOIS INSURANCE**
    ROCK MEDICAL PHARMACY,           **CLAIMS FRAUD PREVENTION ACT**
28  ELWYN SPECIALTY CARE, MED        **[740 Ill. Comp. Stat. 92/1 et seq.];**

                              -2-
                          **COMPLAINT**

587256.1
587256.2

CENTER SPECIALTY
PHARMACY, DECILLION
HEALTHCARE, PACIFIC
HEALTH GROUP, ACON
INVESTMENTS LLC, and TRITON
PACIFIC CAPITAL PARTNERS
LLC.,

Defendants.

INDIANA FALSE CLAIMS AND
WHISTLEBLOWER PROTECTION
ACT [Ind. Code Ann. §§ 5-11-5.5-1 et
seq.]; INDIANA MEDICAID FALSE
CLAIMS AND WHISTLEBLOWER
PROTECTION ACT [Ind. Code Ann.
§§ 5-11-5.7 et seq.]; IOWA FALSE
CLAIMS ACT [Iowa Code §§ 685 et
seq.]; LOUISIANA MEDICAL
ASSISTANCE PROGRAMS
INTEGRITY LAW [La. Rev. Stat. §§
46:438 et seq.]; MARYLAND FALSE
CLAIMS ACT [Md. Gen. Provis. §§ 8-
101 et seq.]; MARYLAND FALSE
HEALTH CLAIMS ACT [Md. Code
Ann., Health-Gen. §§ 2-601 et seq.];
MASSACHUSETTS FALSE CLAIMS
ACT [Mass. Gen. Laws ch. 12 §§ 5 et
seq.]; MICHIGAN MEDICAID FALSE
CLAIMS ACT [Mich. Comp. Laws §§
400.601 et seq.]; MINNESOTA FALSE
CLAIMS ACT [Minn. Stat. §§ 15C.01 et
seq.]; MONTANA FALSE CLAIMS
ACT [Mont. Code Ann. §§ 17-8-401 et
seq.]; NEVADA FALSE CLAIMS ACT
[Nev. Rev. Stat. Ann. §§ 357.010 et seq.];
NEW JERSEY FALSE CLAIMS ACT
[N.J. Stat. §§ 2A:32C-1 et seq.]; NEW
MEXICO MEDICAID FALSE
CLAIMS ACT [N.M. Stat. Ann. §§ 27-
14-1 et seq.]; NEW MEXICO FRAUD
AGAINST TAXPAYERS ACT [N.M.
Stat. Ann. §§ 44-9-1 et seq.]; NEW
YORK FALSE CLAIMS ACT [N.Y.
State Fin. §§ 187 et seq.]; NORTH
CAROLINA FALSE CLAIMS ACT
[N.C. Gen. Stat. §§ 1-605 et seq.];
OKLAHOMA MEDICAID FALSE
CLAIMS ACT [Okla. Stat. tit. 63 §§
5053 et seq.]; RHODE ISLAND STATE
FALSE CLAIMS ACT [R.I. Gen. Laws
§§ 9-1.1 et seq.]; TENNESSEE FALSE
CLAIMS ACT [Tenn. Code Ann. §§ 4-
18-103 et seq.]; TENNESSEE
MEDICAID FALSE CLAIMS ACT
[Tenn. Code Ann. §§ 71-5-181 et seq.];
TEXAS MEDICAID FRAUD
PREVENTION ACT [Tex. Hum. Res.
Code Ann. §§ 36.001 et seq.];
VERMONT FALSE CLAIMS ACT [Vt.
Stat. Ann. tit. 32, §§ 630 et seq.];
VIRGINIA FRAUD AGAINST
TAXPAYERS ACT [Va. Code Ann §§
8.01-216.1 et seq.]; WASHINGTON
STATE MEDICAID FRAUD FALSE

-3-
**COMPLAINT**

587256.1
587256.2

1                                      **CLAIMS ACT [Rev. Wash. Rev. Code**
2                                        **§§ 74.66.005 et seq.]; CHICAGO**
                                           **FALSE CLAIMS ACT [Municipal Code**
3                                        **§§ 1-22-010 et seq.]**

4                                        **JURY TRIAL DEMANDED**

5                                        **FILED IN CAMERA AND UNDER**
6                                        **SEAL PURSUANT TO 31 U.S.C.**
                                       **§3730(b)(2)**

7

8        Plaintiff-Relator Matthew Webster, through his attorneys Phillips & Cohen

9 LLP, on behalf of the United States of America, the States of California, Colorado,

10 Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa,

11 Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada,

12 New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island,

13 Tennessee, Texas, Vermont, Virginia, Washington, and the District of Columbia

14 ("the States"); and the City of Chicago, Illinois, collectively, "Plaintiffs," for his

15 Complaint against defendants BioMatrix Holdings, LLC, BioMatrix Specialty

16 Pharmacy, LLC D/B/A BioMatrix, FFP Holdco, LLC d/b/a Matrix Health Group,

17 Factor Support Network, FFP Acquisition II, LLC d/b/a Medex Biocare,

18 BiologicTx, Elwyn Pharmacy Group, LLC, Elwyn Pharmacy, Glen Rock Medical

19 Pharmacy, Elwyn Specialty Care, Med Center Specialty Pharmacy, Decillion

20 Healthcare (the "Pharmacy Defendants" or "BioMatrix and BioMatrix Related

21 Pharmacies"); Pacific Health Group; Acon Investments, LLC and Triton Pacific

22 Capital Partners, LLC (the "Private Equity Firm Defendants"), collectively

23 "Defendants," alleges based upon personal knowledge, relevant documents, and

24 information and belief, as follows:

25 **I.**      **INTRODUCTION**

26        1.     This is an action to recover damages and civil penalties on behalf of

27 the United States of America and the States arising from false and/or fraudulent

28 records, statements and claims made, used and caused to be made, used or

-4-
**COMPLAINT**

587256.1
587256.2

1    presented by Defendants and/or their agents, employees and co-conspirators in

2    violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729 - 3733, as

3    amended ("the FCA" or "the Act").

4        2.    This action concerns flagrant kickback schemes whereby the

5    Pharmacy Defendants and Pacific Health Group—with the knowledge of the

6    Private Equity Defendants— pay, or caused to be paid, individual hemophilia

7    patients to refer family members and friends with hemophilia to the Pharmacy

8    Defendants to fill prescriptions for hemophilia drugs, and then fraudulently charge

9    federal health care programs and private insurers for tainted prescription purchases.

10   Typically, a patient's hemophilia drugs cost hundreds of thousands of dollars

11   annually and are an extremely valuable revenue source to the pharmacies that fill

12   those prescriptions.  Accordingly, to steer lucrative hemophilia drug business to

13   their pharmacies, the Pharmacy Defendants and Pacific Health Group improperly

14   paid dozens of hemophilia patients for the sole purpose of their recruiting and

15   referring other patients to use the Pharmacy Defendants' pharmacy services.

16       3.    As set forth below, Defendants' acts also constitute violations of the

17   California False Claims Act, Cal. Gov't Code §§ 12650 et seq.; the California

18   Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7; the Colorado Medicaid

19   False Claims Act, Colo. Rev. Stat. §§ 25.5-4-303.5 et seq.; the Connecticut False

20   Claims Act, Conn. Gen. Stat. §§ 4-274 et seq.; the Delaware False Claims and

21   Reporting Act, Del. Code Ann. tit. 6, §§ 1201 et seq.; the District of Columbia

22   False Claims Act, D.C. Code Ann. §§ 2-381.01 et seq.; the Florida False Claims

23   Act, Fla. Stat. Ann. §§ 68.081 et seq.; the Georgia Taxpayer Protection Against

24   False Claims Act and Georgia False Medicaid Claims Act, Ga. Code Ann. §§ 23-3-

25   120 et seq. and Ga. Code Ann. §§ 49-4-168 et seq.; the Hawaii False Claims Act,

26   Haw. Rev. Stat. §§ 661-21 et seq.; the Illinois False Claims Act, 740 Ill. Comp.

27   Stat. 175/1 et seq.; the Illinois Insurance Claims Fraud Prevention Act, 740 Ill.

28   Comp. Stat. 92/1 et seq.; the Indiana False Claims and Whistleblower Protection

-5-
**COMPLAINT**

1  Act, Ind. Code Ann. §§ 5-11-5.5-1 et seq.; the Indiana Medicaid False Claims and

2  Whistleblower Protection Act, Ind. Code Ann. §§ 5-11-5.7 et seq.; the Iowa False

3  Claims Act, Iowa Code §§ 685 et seq.; the Louisiana Medical Assistance Programs

4  Integrity Law, La. Rev. Stat. §§ 46:438 et seq.; the Maryland False Claims Act,

5  Md. Gen. Provis. §§ 8-101 et seq.; the Maryland False Health Claims Act, Md.

6  Code Ann., Health-Gen. §§ 2-601 et seq.; the Massachusetts False Claims Law,

7  Mass. Gen. Laws ch. 12 §§ 5 et seq.; the Michigan Medicaid False Claims Act,

8  Mich. Comp. Laws §§ 400.601 et seq.; the Minnesota False Claims Act, Minn.

9  Stat. §§ 15C.01 et seq.; the Montana False Claims Act, Mont. Code Ann. §§ 17-8-

10  401 et seq.; the Nevada False Claims Act, Nev. Rev. Stat. Ann. §§ 357.010 et seq.;

11  the New Jersey False Claims Act, N.J. Stat. §§ 2A:32C-1 et seq.; the New Mexico

12  Medicaid False Claims Act and New Mexico Fraud Against Taxpayers Act, N.M.

13  Stat. Ann. §§ 27-14-1 et seq. and §§ 44-9-3 et seq.; the New York False Claims

14  Act, N.Y. State Fin. §§ 187 et seq.; the North Carolina False Claims Act, N.C.

15  Gen. Stat. §§ 1-605 et seq.; the Oklahoma Medicaid False Claims Act, Okla. Stat.

16  tit. 63 §§ 5053 et seq.; the Rhode Island State False Claims Act, R.I. Gen. Laws §§

17  9-1.1 et seq.; the Tennessee False Claims Act and the Tennessee Medicaid False

18  Claims Act, Tenn. Code Ann. §§ 4-18-103 et seq. and §§ 71-5-181 et seq.; the

19  Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. §§ 36.001 et

20  seq.; the Vermont False Claims Act, Vt. Stat. Ann. tit. 32, §§ 630 et seq.; the

21  Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 et seq.; the

22  Washington State Medicaid Fraud False Claims Act, Wash. Rev. Code §§

23  74.66.005 et seq.; and the Chicago False Claims Act, Municipal Code §§ 1-22-010

24  et seq.

25       4.      Based on the foregoing laws, qui tam plaintiff Matthew Webster

26  seeks, through this action, to recover damages and civil penalties arising from the

27  false or fraudulent records, statements, and/or claims that Defendants knowingly

28  made or caused to be made in connection with the fraudulent schemes.

-6-

**COMPLAINT**

## II. THE PARTIES

5. Plaintiff-Relator Matthew Webster is a resident of the State of Texas. He was the Vice President for Managed Care at BioMatrix Specialty Pharmacy from approximately November 2016 through March 2018.

6. Defendant BioMatrix Holdings, LLC is a private limited liability company organized under the laws of the State of Delaware with its principal place of business at 3300 Corporate Avenue, Suite 104, Weston, Florida 33331. It is a holding company that owns the BioMatrix "family" of specialty pharmacies, which has customers throughout all 50 states and the District of Columbia.

7. Defendant BioMatrix Specialty Pharmacy, LLC d/b/a BioMatrix, is a private limited liability company organized under the laws of the State of Florida and has its principal place of business at 3300 Corporate Avenue, Suite 104, Weston, Florida 33331. In November 2016, the company was purchased by Acon Investments, LLC and Triton Pacific Capital Partners, LLC. BioMatrix Specialty Pharmacy, LLC d/b/a BioMatrix owns and operates a nationwide family of specialty pharmacies that provides support services and medications, many of which are extremely costly, to patients with complex chronic diseases, such as hemophilia and bleeding disorders, solid organ transplants, Hepatitis-C, and HIV. Unless noted otherwise, references to "BioMatrix" in this Complaint refer to Defendants BioMatrix Holdings, LLC and BioMatrix Specialty Pharmacy, LLC d/b/a BioMatrix.

8. BioMatrix has customers throughout the United States, including in the Central District of California. BioMatrix is a "provider" under Medicare, Medicaid, and other federal health care programs. The majority of the prescriptions that BioMatrix fills are for patients covered by Medicare, Medicaid, other federal health care programs, and private insurance plans.

9. FFP Holdco, LLC d/b/a Matrix Health Group is a specialty pharmacy organized under the laws of the State of Florida that provides nationwide service

-7-

**COMPLAINT**

1    for patients with chronic health conditions, including bleeding disorders, transplant

2    therapy, IVIG, HIV, and hepatitis C.  It has a principal place of business at 3300

3    Corporate Avenue, Suite 104, Weston, FL 33331.  FFP Holdco, LLC d/b/a Matrix

4    Health Group is a subsidiary or affiliate of BioMatrix.  It is a "provider" under

5    Medicare, Medicaid, and other federal health care programs.  The majority of the

6    prescriptions that FFP Holdco, LLC d/b/a Matrix Health Group fills are for patients

7    covered by Medicare, Medicaid, other federal health care programs, and private

8    insurance plans.

9        10.    Factor Support Network is a specialty pharmacy that targets patients

10   with hemophilia, von Willebrand disease, and other chronic disorders.  It provides

11   service nationwide but has a principle place of business at 900 Avenida Acaso,

12   Suite A, Camarillo, CA 93012-8749.  Factor Support Network is a subsidiary or

13   affiliate of BioMatrix.  It is a "provider" under Medicare, Medicaid, and other

14   federal health care programs.  The majority of the prescriptions that Factor Support

15   Network fills are for patients covered by Medicare, Medicaid, other federal health

16   care programs, and private insurance plans.

17       11.    FFP Acquisition II, LLC d/b/a Medex Biocare is a specialty pharmacy

18   organized under the laws of the State of Florida that provides services to patients

19   with bleeding disorders and other chronic conditions.  It has its principal place of

20   business at 8024 Stage Hills Blvd, Suite 107, Bartlett, TN 38133-4048.  Its

21   corporate address is 3300 Corporate Avenue, Suite 104, Weston, Florida.  FFP

22   Acquisition II, LLC d/b/a Medex Biocare is a subsidiary or affiliate of BioMatrix.

23   It is a "provider" under Medicare, Medicaid, and other federal health care

24   programs.  The majority of the prescriptions that FFP Acquisition II, LLC d/b/a

25   Medex Biocare fills are for patients covered by Medicare, Medicaid, other federal

26   health care programs, and private insurance plans.

27       12.    BiologicTx is an infusion and pharmacy provider of biologic and oral

28   transplant therapy management that specializes in solid organ transplant services

-8-

**COMPLAINT**

1  and offers a comprehensive nationwide specialty pharmacy services. It is

2  headquartered at 40-D Commerce Way, Totowa, NJ 07512. BiologicTx is a

3  subsidiary or affiliate of BioMatrix. It is a "provider" under Medicare, Medicaid,

4  and other federal health care programs. The majority of the prescriptions that

5  BiologicTx fills are for patients covered by Medicare, Medicaid, other federal

6  health care programs, and private insurance plans.

7      13.    Elwyn Pharmacy Group, LLC is a multi-location specialty pharmacy

8  organized under the laws of the Commonwealth of Pennsylvania and

9  headquartered at 3070 McCann Farm Drive, Suite 101, Garnet Valley, PA 19060.

10  Operating out of that location are Elwyn Pharmacy, a retail pharmacy, and Elwyn

11  Specialty Care, a specialty pharmacy. Elwyn PharmacyGroup, LLC also operates

12  specialty pharmacies at two other locations: Glen Rock Medical Pharmacy, which

13  specializes in fertility and injectable medications, is located at 210 Rock Rd, Glen

14  Rock, NJ 07452; and Med Center Specialty Pharmacy, a closed-door pharmacy

15  that serves long-term care and specialty patients, many of whom live in skilled and

16  assisted living facilities, is headquartered at 3100 MacCorkle Avenue S.E., Suite

17  100, Charleston, WV 25304. Elwyn Pharmacy Group is a subsidiary or affiliate of

18  BioMatrix. It is a "provider" under Medicare, Medicaid, and other federal health

19  care programs. The majority of the prescriptions that Elwyn Pharmacy Group,

20  LLC fills are for patients covered by Medicare, Medicaid, other federal health care

21  programs, and private insurance plans.

22      14.    Decillion Healthcare is an Ohio healthcare company that provides

23  pharmacy management and clinical services to patients with specialized disorders,

24  including hemophilia, hepatitis, HIV, and other chronic conditions. It serves

25  patients across the state and is headquartered at 270 Cramer Creek Court, Dublin,

26  Ohio 43017. Decillion Healthcare is a subsidiary or affiliate of BioMatrix. It is a

27  "provider" under Medicare, Medicaid, and other federal health care programs. The

28  majority of the prescriptions that Decillion Healthcare fills are for patients covered

-9-

**COMPLAINT**

1  by Medicare, Medicaid, other federal health care programs, and private insurance

2  plans.

3     15.    Collectively, FFP Holdco, LLC d/b/a Matrix Health Group, Factor

4  Support Network, FFP Acquisition II, LLC d/b/a Medex Biocare, BiologicTx,

5  Elwyn Pharmacy Group, LLC, and Decillion Healthcare shall be referred to in this

6  Complaint as "BioMatrix Related Pharmacies" unless otherwise noted.

7  Collectively, BioMatrix and the BioMatrix Related Pharmacies shall be referred to

8  in this Complaint as "BioMatrix and the BioMatrix Related Pharmacies" or the

9  "Pharmacy Defendants."

10    16.    Pacific Health Group, LLC ("PHG") is a shell company controlled by

11  BioMatrix.  It is organized under the laws of the State of Nevada and is managed

12  by Bruce Greenberg and Aron Leibowich.

13    17.    Acon Investments, LLC ("Acon Investments") is a private equity

14  investment group based in Washington, DC.  Acon Investments is an owner of

15  BioMatrix.

16    18.    Triton Pacific Capital Partners, LLC ("Triton Pacific") is a private

17  equity firm headquartered in Los Angeles, California.  Triton Pacific is also an

18  owner of BioMatrix.  Collectively, Acon Investments and Triton Pacific shall be

19  referred to in this Complaint as the "Private Equity Firm Defendants."

20  **III.   JURISDICTION AND VENUE**

21    19.    This Court has jurisdiction over the subject matter of this action

22  pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 31 U.S.C. § 3732, the last of

23  which specifically confers jurisdiction on this Court for actions brought pursuant to

24  31 U.S.C. §§ 3729 and 3730.  Under 31 U.S.C. § 3730(e), there has been no

25  statutorily-relevant public disclosure of the "allegations or transactions" in this

26  Complaint.  Even if there had been any such public disclosure, Mr. Webster is the

27  original source of the allegations herein because prior to any relevant public

28  disclosure, he voluntarily disclosed to the government the information on which

-10-

**COMPLAINT**

587256.1
587256.2

1    the allegations or transactions in the complaint are based, and/or because he has

2    knowledge that is independent of and materially adds to any publicly-disclosed

3    allegations or transactions relevant to his claims, and voluntarily provided the

4    information to the government before filing this action.

5         20.    This Court has jurisdiction over the Defendants pursuant to 31 U.S.C.

6    § 3732(a) which authorizes nationwide service of process, and because the

7    Defendants have minimum contacts with the United States.  Moreover, the

8    Defendants can be found to have transacted business in the Central District of

9    California.

10        21.    Venue is proper in the Central District of California pursuant to 28

11   U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. 3732(a) because the Defendants can

12   be found in and/or transact or have transacted business in this district.  At all times

13   relevant to this Complaint, Defendants regularly conducted substantial business

14   within this district and/or made significant sales within this district.

15   **IV.    FEDERAL HEALTH CARE PROGRAMS**

16        **A.    The Medicare Program**

17        22.    Congress established the Medicare program, or Title XVIII of the

18   Social Security Act, in 1965 with the goal of providing nationalized health

19   coverage for Americans aged 65 or older.  See 42 U.S.C. §§ 1395 et seq.  In

20   addition to the elderly, a large portion of Medicare's patient population is disabled.

21   In 2015, Medicare covered roughly 55 million Americans, either through the

22   traditional federally-administered Medicare program or through private health

23   plans, also known as Medicare Advantage plans.  Medicare is funded through the

24   Medicare Trust Funds, which rely on workers' payroll deductions and government

25   funds.

26        23.    The United States Department of Health and Human Services

27   ("HHS") and the Centers for Medicare and Medicaid Services ("CMS"), an agency

28   within HHS, direct and manage the Medicare program.

-11-

**COMPLAINT**

1    24.    Medicare has four parts: Part A, which provides hospital insurance;

2    Part B, which provides medical insurance; Part C, which includes managed care

3    plans; and Part D, which provides prescription drug benefits.

4    **B.    The Medicaid Program**

5    25.    Medicaid was also created in 1965 under Title XIX of the Social

6    Security Act.  It is a public assistance program providing for payment of medical

7    expenses for low-income and disabled patients.  Funding for Medicaid is shared

8    between the federal government and those states participating in the program.

9    Thus, under Title XIX of the Social Security Act ("Medicaid"), 42 U.S.C. §§ 1396

10   et seq., federal money is distributed to the states, which in turn provide certain

11   medical services to the poor.

12   26.    Federal Medicaid regulations require each state to designate a single

13   state agency responsible for its Medicaid program.  The agency must create and

14   implement a "plan for medical assistance" that is consistent with Title XIX and

15   with the regulations of the Secretary of the United States Department of Health and

16   Human Services ("the Secretary").  After the Secretary approves the plan

17   submitted by the state, the state is entitled each quarter to be reimbursed for a

18   percentage of its expenditures made in providing specific types of "medical

19   assistance" under the plan.  42 U.S.C. § 1396b(a)(1).  This reimbursement is called

20   "federal financial participation" ("FFP").

21   27.    The Social Security Act requires states to pay for certain medical

22   assistance services, such as inpatient hospital care.  42 U.S.C. § 1396a(10)(A).

23   Coverage of all other services is optional.  42 U.S.C. § 1396a(54).  One optional

24   service is reimbursement for prescription drugs.  Although optional, all states

25   currently provide coverage for outpatient prescription drugs through their Medicaid

26   programs.

27   28.    Reimbursement for prescription drugs under the Medicaid program is

28   available for "covered outpatient drugs."  42 U.S.C. §§1396b(i)(10), 1396r-8(k)(2),

-12-

1   (3).  Covered outpatient drugs are drugs that are used for "a medically accepted

2   indication."  42 U.S.C. § 1396r-8(k)(3).

3       29.    Pharmacies pay pharmaceutical wholesalers or other suppliers for

4   drugs and then submit claims to the state Medicaid program for reimbursement

5   through an electronic claims transmission process.  The federal government then

6   reimburses the state.  <u>See</u> 42 U.S.C. § 1396

7       **C.**    **C. Other Federal Health Care Programs**

8       30.    The federal government administers other health care programs that

9   include, but are not limited to, TRICARE, CHAMPVA, and the Federal Employee

10   Health Benefit Program.

11       31.    TRICARE, which the United States Department of Defense

12   administers, is a health care program for active duty military personnel, retirees,

13   and their families.  10 U.S.C. §§ 1071 <u>et seq.</u>; 32 C.F.R. § 199.4(a).

14       32.    CHAMPVA, which the United States Department of Veteran Affairs

15   Administers, is a health care program for families of veterans with 100-percent

16   service-connected disabilities.  38 U.S.C. §§ 1781 <u>et seq.</u>; 38 C.F.R. § 17.270(a).

17       33.    The Federal Employee Health Benefit Program, which the United

18   States Office of Personnel Management administers, provides health insurance for

19   federal employees, retirees, and their survivors.  5 U.S.C. §§ 8901 <u>et seq.</u>; 5 C.F.R.

20   § 890.12.

21       **D.**    **State and Local Health Care Programs**

22       34.    Each of the State and Municipal plaintiffs administers other health

23   care programs that include, but are not limited to, public employee health plans.

24       35.    The State of California administers a number of health care programs

25   including, but not limited to, CalPERS, the state's public employee pension fund

26   that provides health plans to active and retired public employees.

27       36.    The State of Connecticut administers a number of health care

28   programs including, but not limited to, health insurance plans for state employees.

-13-

**COMPLAINT**

37. The State of Delaware administers a number of health care programs including, but not limited to, the Delaware Public Employees' Retirement System, which provides health plans to state employees.

38. The District of Columbia administers a number of health care programs including, but not limited to, health insurance plans for District employees.

39. The State of Florida administers a number of health care programs including, but not limited to, health plans for active and retired state employees.

40. The State of Georgia administers a number of health care programs including, but not limited to, the State Health Benefit Plan for active and retired state employees.

41. The State of Hawaii administers a number of health care programs including, but not limited to, the Hawaii Employer-Union Health Benefits Trust Fund ("EUTF"), which offers a variety of health insurance plans to state employees.

42. The State of Illinois administers a number of health care programs including, but not limited to, health insurance plans for state employees.

43. The State of Indiana administers a number of health care programs including, but not limited to, health insurance plans for state employees.

44. The State of Iowa administers a number of health care programs including, but not limited to, health insurance plans for state employees.

45. The State of Maryland administers a number of health care programs including, but not limited to, health insurance plans for state employees.

46. The State of Massachusetts administers a number of health care programs including, but not limited to, health insurance plans for state employees offered through the State's Group Insurance Commission ("GIC").

47. The State of Minnesota administers a number of health care programs including, but not limited to, the State Employee Group Insurance Program

-14-

1  ("SEGIP"), which provides a variety of health insurance plans for state employees.

2      48.    The State of Montana administers a number of health care programs

3  including, but not limited to, the State of Montana Benefit Plan for state

4  employees, retirees, legislators, and survivors.

5      49.    The State of Nevada administers a number of health care programs

6  including, but not limited to, the Nevada Public Employees' Benefits Program

7  ("PEBP"), which offers health insurance to state employees.

8      50.    The State of New Jersey administers a number of health care

9  programs including, but not limited to, the State Health Benefits Program

10  ("SHBP"), the School Employees' Health Benefits Program ("SEHBP"), and a

11  Worker's Compensation Program.

12      51.    The State of New Mexico administers a number of health care

13  programs including, but not limited to, the State of New Mexico Group Benefits

14  Plan, which offers health insurance for state employees, and the New Mexico

15  Retiree Health Care Authority, which offers health insurance for eligible public

16  sector retirees.

17      52.    The State of New York administers a number of health care programs

18  including, but not limited to, the New York State Health Insurance Program

19  ("NYSHIP") for active and retired state and local government employees.

20      53.    The State of North Carolina administers a number of health care

21  programs including, but not limited to, the North Carolina State Health Plan for

22  Teachers and State Employees, which provides health insurance plans for state

23  employees.

24      54.    The State of Rhode Island administers a number of health care

25  programs including, but not limited to, health insurance plans for active and retired

26  state employees.

27      55.    The State of Tennessee administers a number of health care programs,

28  including, but not limited to, health insurance plans for active and retired state and

-15-

**COMPLAINT**

1    local government employees.

2        56.    The State of Vermont administers a number of health care programs

3    including, but not limited to, health insurance plans for active and retired state

4    employees.

5        57.    The State of Virginia administers a number of health care programs

6    including, but not limited to, health insurance plans for active and retired state

7    employees.

8        58.    The City of Chicago, Illinois administers a number of health care

9    programs including, but not limited to, health insurance plans for city employees

10   and retirees.

11   **V.    APPLICABLE LAW**

12        **A.    The Federal False Claims Act**

13        59.    The FCA was originally enacted during the Civil War.  Congress

14   substantially amended the Act in 1986—and, again, in 2009 and 2010—to enhance

15   the ability of the United States government to recover losses sustained as a result

16   of fraud against it.

17        60.    The Act was amended in 1986 because Congress found that fraud in

18   federal programs was pervasive and that the Act, which Congress has characterized

19   as the primary tool for combating fraud against the federal government, was in

20   need of modernization.  Congress intended that the 1986 amendments would create

21   incentives for individuals with knowledge of fraud against the government to

22   disclose the information without fear of reprisals or government inaction, and

23   would encourage the private bar to commit legal resources to prosecuting fraud on

24   the government's behalf.

25        61.    Likewise, the 2009 and 2010 amendments were introduced to fill gaps

26   in the coverage of the Act and to correct ambiguities in the drafting and

27   misinterpretations of the intended scope of the Act that had emerged in case law in

28   the more than 20 years that had passed since the 1986 amendments.

-16-

**COMPLAINT**

62.     As amended in the Fraud Enforcement and Recovery Act of 2009 ("FERA"), the Act imposes liability upon any person who, *inter alia*: (A) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment of approval" or, effective June 7, 2008, (B) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729 (a)(1)(A)-(B) (2009).

63.     As amended by FERA, "claim" is defined as "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A) (2009).

64.     Any person who violates the Act is liable for a civil penalty of between $11,181 and $22,363 for each false or fraudulent claim, plus three times the amount of the damages sustained by the United States.

65.     The Act allows any person having information about false or fraudulent claims to bring an action for himself and the United States, and to share in any recovery.  The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.

**B.     State False Claims Acts**

66.     Various states have enacted statutes that prohibit similar conduct as that prohibited by the Federal FCA, allow plaintiffs to bring an action on the

-17-

587256 1
587256.2

1    States' behalf, and provide analogous remedies to those provided in the Federal

2    FCA.  As set forth below, Defendants' actions alleged in this Complaint also

3    constitute violations of the California False Claims Act, Cal. Gov't Code §§ 12650

4    et seq.; the Colorado Medicaid False Claims Act, Colo. Rev. Stat. §§ 25.5-4-303.5,

5    et seq.; the Connecticut False Claims Act, Conn. Gen. Stat. §§ 4-274 et seq.; the

6    Delaware False Claims and Reporting Act, Del. Code. Ann. tit. 6 §§ 1201 et seq.;

7    the Florida False Claims Act, Fla. Stat. Ann. §§ 68.081 et seq.; the Georgia

8    Taxpayer Protection Against False Claims Act and Georgia False Medicaid Claims

9    Act, Ga. Code Ann. §§ 23-3-120 et seq. and Ga. Code Ann. §§ 49-4-168 et seq.;

10    the Hawaii False Claims Act, Haw. Rev. Stat. §§ 661-21 et seq.; the Illinois False

11    Claims Act, 740 Ill. Comp. Stat. 175/1 et seq.; the Indiana False Claims and

12    Whistleblower Protection Act, Ind. Code Ann. §§ 5-11-5.5 et seq.; the Indiana

13    Medicaid False Claims and Whistleblower Protection Act, Ind. Code Ann. §§ 5-

14    11-5.7 et seq.; the Iowa False Claims Act, Iowa Code §§ 685 et seq.;  the Louisiana

15    Medical Assistance Programs Integrity Law, La. Rev. Stat. §§ 46:438 et seq.; the

16    Maryland False Claims Act and the Maryland False Health Claims Act, Md. Gen.

17    Provis. §§ 8-101 et seq. and Md. Code Ann., Health-Gen. §§ 2-601 et seq.; the

18    Massachusetts False Claims Law, Mass. Gen. Laws ch. 12 §§ 5 et seq.; the

19    Michigan Medicaid False Claims Act, Mich. Comp. Laws §§ 400.601 et seq.; the

20    Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq.; the Montana False

21    Claims Act, Mont. Code Ann. §§ 17-8-401 et seq.; the Nevada False Claims Act,

22    Nev. Rev. Stat. Ann. §§ 357.010 et seq.; the New Jersey False Claims Act, N.J.

23    Stat. §§ 2A:32C-1 et seq.; the New Mexico Medicaid False Claims Act and New

24    Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §§ 27-14-1 et seq. and §§

25    44-9-3 et seq.; the New York False Claims Act, N.Y. State Fin. §§ 187 et seq.; the

26    North Carolina False Claims Act, NC Gen. Stat. §§ 1-605 et seq.; the Oklahoma

27    Medicaid False Claims Act, Okla. Stat. tit. 63 §§ 5053 et seq.; the Rhode Island

28    False Claims Act, R.I. Gen. Laws §§ 9-1.1 et seq.; the Tennessee False Claims Act

-18-

**COMPLAINT**

1  and the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 4-18-103 <u>et</u>

2  <u>seq.</u> and §§ 71-5-181 <u>et seq.</u>; the Texas Medicaid Fraud Prevention Act, Tex. Hum.

3  Res. Code Ann. §§ 36.001 <u>et seq.</u>; the Virginia Fraud Against Taxpayers Act, Va.

4  Code Ann. §§ 8.01-216.1 <u>et seq.</u>; the Washington State Medicaid Fraud False

5  Claims Act, Wash. Rev. Code §§ 74.66.005 <u>et seq.</u>; and the District of Columbia

6  False Claims Act, D.C. Code Ann. §§ 2-381.01 <u>et seq.</u>

7          **C.**    **<u>California Insurance Frauds Prevention Act</u>**

8         67.    The California Insurance Frauds Prevention Act ("CIFPA"),

9  California Insurance Code § 1871.7 creates civil liability for any violation of

10 California Penal Code § 550, which makes it unlawful to "[k]nowingly prepare,

11 make, or subscribe any writing, with the intent to present or use it, or allow it to be

12 presented, in support of any false or fraudulent claim" or to "[k]nowingly make or

13 cause to be made any false or fraudulent claim for payment of a health care

14 benefit." Cal. Penal Code § 550(a)(5) and (6). It is additionally unlawful to aid,

15 abet, solicit, or conspire with any person to do either of the above. <u>Id.</u>

16        68.    In addition, the CIFPA makes it unlawful to "employ runners,

17 cappers, steerers, or other persons . . . to procure clients or patients to perform or

18 obtain services or benefits under a contract or insurance or that will be the basis for

19 a claim against an insured individual or his or her insurer," Cal. Ins. Code §

20 1871.7(a), and creates civil liability for any person who violates that provision.

21 Cal. Ins. Code § 1871.7(b).

22        69.    Under CIFPA, every person who violates California Penal Code § 550

23 is subject to civil penalties between $5,000 and $10,000, plus an assessment of not

24 more than three times the amount of each claim for compensation submitted

25 pursuant to the contract of insurance. Cal. Ins. Code § 1871.7(b). This penalty is

26 assessed for "[e]ach fraudulent claim presented to an insurance company by a

27 defendant." <u>Id.</u>

28        70.    A private person, *i.e.*, a qui tam plaintiff, may enforce the CIFPA.

-19-

1    Cal. Ins. Code § 1871.7(e).

2        71.    The purpose of the CIFPA is to protect and compensate California for

3    the harm to the state that insurance fraud causes and to assist the state to "more

4    effectively investigate and discover insurance frauds, [and] halt fraudulent

5    activities." Cal. Ins. Code § 1871(a).

6        **D.    Illinois Insurance Claims Fraud Prevention Act**

7        72.    The Illinois Insurance Claims Fraud Prevention Act ("IICFPA") is

8    also aimed at prosecuting fraudulent insurance claims filed against private

9    insurance companies or self-insured entities. 740 Ill. Comp. Stat. 92/1 et seq.

10       73.    Under the IICFPA, a claim may be brought against a defendant for

11   "knowingly offer[ing] or pay[ing] any remuneration directly or indirectly, in cash

12   or in kind, to induce any person to procure clients or patients to obtain services or

13   benefits under a contract of insurance" except as permitted by law. 740 Ill. Comp.

14   Stat. 92/5(a).

15       74.    Civil penalties include $5,000 to $10,000 per false claim submitted

16   under an insurance contract, plus three times the amount of each false claim;

17   equitable relief to prevent dissipation of illegal proceeds or to protect the public;

18   and payment of attorneys' fees and costs.

19       75.    Under the IICFPA, any interested person may bring a civil action for

20   violations of the IICFPA. 740 Ill. Comp. Stat. 92/15(a).

21       **E.    The Chicago False Claims Act**

22       76.    Chicago has enacted a statute that prohibits similar conduct as that

23   prohibited by the Federal FCA, allows plaintiffs to bring an action on the city's

24   behalf, and provides analogous remedies to those provided in the Federal FCA. As

25   set forth below, Defendants' actions alleged in this Complaint also constitute

26   violations of the Chicago False Claims Act, Municipal Code §§ 1-22-010 et seq.

27       **F.    The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)**

28       77.    The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), arose out of

-20-

**COMPLAINT**

587256.1
587256.2

1   Congressional concern that providing things of value to those who can influence

2   health care decisions may corrupt their professional judgment and result in federal

3   funds being diverted to pay for goods and services that are medically unnecessary,

4   of poor quality, or even harmful to a vulnerable patient population.  To protect the

5   integrity of federal health care programs from these difficult-to-detect harms,

6   Congress enacted a prohibition against the payment of kickbacks in any form,

7   regardless of whether the particular kickback actually gives rise to overutilization

8   or poor quality of care.  The statute was first enacted in 1972, and was

9   strengthened in 1977, 1987, and 2010 to ensure that kickbacks disguised as

10  legitimate transactions did not evade its reach.  See Social Security Amendments

11  of 1972, Pub. L. No. 92-603, §§ 242(b) and (c); 42 U.S.C. § 1320a-7b, Medicare-

12  Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95-142; Medicare and

13  Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93; Patient

14  Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119.

15       78.     The Anti-Kickback Statute prohibits any person or entity from

16  soliciting, receiving, offering, or paying any remuneration to induce a person to, or

17  reward a person for referring, recommending, or arranging for the purchase of any

18  item for which payment may be made in whole or in part by a federal health care

19  program.  The statute ascribes liability to both sides of an impermissible kickback

20  relationship.  In pertinent part, the statute provides:

> b. Illegal remunerations . . .
>
> (2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind
>
> to any person to induce such person–
>
> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

587256.1
587256.2

1        (B) to purchase, lease, order or arrange for or recommend
purchasing, leasing or ordering any good, facility,
2        service, or item for which payment may be made in
whole or in part under a Federal health care program,
3        shall be guilty of a felony and upon conviction thereof,
shall be fined not more than $25,000 or imprisoned for
4        not more than five years, or both.

5    42 U.S.C. § 1320a-7b(b).

6        79.    The Anti-Kickback Statute not only prohibits outright bribes, but also

7    prohibits offering or paying for any remuneration that has, as one purpose,

8    inducement of referrals to federal health care programs.  See United States v. Kats,

9    871 F.2d 105, 108 (9th Cir. 1989); see also United States v. Borrasi, 639 F.3d 774,

10    782 (7th Cir. 2011); United States v. McClatchey, 217 F.3d 823, 835 (10th Cir.

11    2000); United States v. Davis, 132 F.3d 1092, 1094 (5th Cir. 1998); United States

12    v. Greber, 760 F.2d 68 (3d Cir. 1985); United States v. Krikheli, 461 Fed. App'x 7,

13    11 (2d Cir. 2012); United states ex rel. Wood v. Allergan, Inc., 246 F. Supp. 3d

14    772, 806 (S.D.N.Y. 2017).  Claims that include items or services resulting from a

15    violation of the AKS are false or fraudulent under the FCA.  42 U.S.C. § 1320a-

16    7b(g).

17        80.    The Office of Inspector General for the United States Department of

18    Health and Human Services ("HHS-OIG") has published safe harbor regulations

19    that define arrangements that are not subject to the AKS because the practice

20    would be unlikely to result in fraud or abuse. Safe harbor protection is afforded

21    only to those arrangements that precisely meet all of the conditions set forth in the

22    safe harbor.

23        81.    Arrangements between an entity and an independent contractor may

24    be protected by a safe harbor, but only if they satisfy all of the following seven

25    standards.  Specifically, the arrangement must (1) be in writing and signed by the

26    parties; (2) cover all services provided by the independent contractor, and specify

27    those services; (3) for part-time work, set forth the schedule, length, and exact

28    charge for the intervals of work; (4) span at least one year; (5) set in advance the

-22-

**COMPLAINT**

1    aggregate compensation, which must be fair market value and may not be

2    determined in a manner that takes into account the volume or value of any referrals

3    or business otherwise generated between the parties; (6) not concern services that

4    involve the counseling or promotion of a business arrangement or other activity

5    that violates any State or Federal law; and (7) cover aggregate services that do not

6    exceed those reasonably necessary to accomplish the commercially reasonable

7    purpose of the services.  42 C.F.R. § 1001.952(d).

8         82.    Another safe harbor applies to payments made to a referral service if

9    four standards are met, including that any payment "is based only on the cost of

10   operating the referral service, and not on the volume or value of any referrals to or

11   business otherwise generated" for which payment may be received from Medicare,

12   Medicaid, or another federal health care program.  42 C.F.R. § 1001.952(f).

13        83.    Finally, there is a safe harbor for payments by an employer to its *bona*

14   *fide* employees "for employment in the provision of covered items or services" for

15   which payment may be made in whole or in part under any federal health care

16   program.  42 U.S.C. § 1320a-7b(b)(3)(B); 42 C.F.R. § 1001.952(i).  Opinions by

17   the HHS-OIG that interpret this safe harbor provision, as well as case law

18   enforcing it, have found that this safe harbor provides a defense against liability for

19   violating the Anti-Kickback Statute only where a bona fide employee is

20   compensated exclusively for the provision of professional services that are covered

21   by a federal health care program.  Any payments to a bona fide employee that are

22   not, in fact, made for the provision of covered professional services do not fall

23   within the safe harbor.

24        84.    The act of referring a patient to a pharmacy or other provider is not a

25   covered item or service.  Therefore, any payments made to an employee in order to

26   compensate that employee for making such referrals are not covered by the

27   employee safe harbor.  This is true even if the majority of an employee's

28   compensation is for the provision of covered services.  As to that portion of the

-23-

**COMPLAINT**

587256.1
587256.2

1    payments that is made to induce referrals and to compensate for an employee's act

2    of referring, the Anti-Kickback Statute is violated and the safe harbor does not

3    apply.

4    85.    The term "employee," as used in the Anti-Kickback Statute safe

5    harbor, "has the same meaning" as the Internal Revenue Code's definition of

6    "employee," found in 26 U.S.C. § 3121(d)(2).  42 C.F.R. § 1001.952(i).  The

7    Internal Revenue Code provides, in relevant part, that an "employee" is "any

8    individual who, under the usual common law rules applicable in determining the

9    employer-employee relationship, has the status of an employee."  26 U.S.C. §

10   3121(d)(2).

11   86.    HHS-OIG specifically did not extend protection under the *bona fide*

12   employee safe harbor to arrangements with independent contractors because of the

13   "existence of widespread abusive practices by salespersons who are independent

14   contractors and, therefore, who are not under appropriate supervision and control."

15   Medicare and State Health Care Programs; Fraud and Abuse; OIG Anti-Kickback

16   Provisions, 56 Fed. Reg. 35,952, 35,981 (July 29, 1991).

17   87.    Once the government has demonstrated each element of a violation of

18   the Anti-Kickback Statute, the burden shifts to the defendant to establish that the

19   defendant's conduct at issue was protected by a safe harbor or exception.  The

20   government need not prove as part of its affirmative case that the defendant's

21   conduct at issue does not fit within a safe harbor.

22   88.    Violation of the Anti-Kickback Statute subjects the violator to

23   exclusion from participation in federal health care programs, civil monetary

24   penalties, and imprisonment of up to five years per violation.  42 U.S.C. § 1320a-

25   7(b)(7), 1320a-7a(a)(7).

26   89.    Compliance with the Anti-Kickback Statute is a precondition to

27   participation as a health care provider under federal health care programs,

28   including Medicare and Medicaid.

-24-

**COMPLAINT**

1      90.    Pursuant to provider agreements, claim forms, or other appropriate

2   means, pharmacies that participate in a federal health care program generally must

3   certify that they have complied with the applicable federal rules and regulations,

4   including the Anti-Kickback Statute.

5   **VI.    FACTUAL BACKGROUND ON HEMOPHILIA**

6      91.    Hemophilia is an inherited disorder in which an individual's blood

7   does not clot properly because it lacks sufficient proteins, called "clotting factors."

8      92.    There are an estimated 20,000 people with hemophilia in the United

9   States.  The disorder occurs in approximately 1 in 5,000 live births.  The disease

10  affects all races and ethnic groups, but, due to the way the gene is passed from one

11  generation to the next, individuals with the condition are almost exclusively male.

12     93.    The gene for hemophilia is carried on the X chromosome.  Males have

13  one X and one Y chromosome (XY) and females have two X chromosomes

14  (XX).  Males inherit the X chromosome from their mother and the Y chromosome

15  from their father.  Females inherit two X chromosomes, one from each parent.

16     94.    The X chromosome contains many genes that are not present on the Y

17  chromosome.  This means that males have only a single copy of most of the genes

18  on the X chromosome, whereas females have two copies.  If a son inherits an X

19  chromosome carrying hemophilia from his mother, he will have hemophilia.

20     95.    Because daughters have two X chromosomes, they will most likely

21  inherit a healthy X chromosome, even if they also inherit the hemophilia gene.  A

22  daughter who inherits an X chromosome that contains the gene for hemophilia is a

23  carrier, meaning that she can pass the gene on to her children.  It is rare, however,

24  for her to have the disease, although it is possible.

25     96.    People with hemophilia A have low levels of clotting factor VIII (8),

26  while those with hemophilia B have low levels of factor IX (9).  Hemophilia A is

27  four times as common as hemophilia B.  The greater the deficiency of the clotting

28  factor, the more severe the symptoms, and the more likely it is that bleeding will

1    occur, which can lead to serious health problems.

2        97.    Normal plasma levels of factor VIII range from 50% to 150%.  Those

3    with mild hemophilia have factor levels of about 6% to 30% and generally

4    experience bleeding only after serious injury, trauma, or surgery.  In many cases,

5    mild hemophilia is not diagnosed until an injury, surgery, or tooth extraction

6    results in excessive bleeding.  The first episode may not occur until adulthood.

7    Mild hemophilia represents about 25% of all cases.

8        98.    Those with moderate hemophilia have factor levels of 1% to 5%.

9    People with moderate hemophilia tend to have bleeding episodes after injuries.

10   Moderate hemophilia represents about 15% of cases.

11       99.    Severe hemophilia is defined as having factor levels of less than 1%.

12   People with severe hemophilia experience prolonged bleeding following an injury

13   but they may also have frequent spontaneous bleeding episodes.  Sometimes

14   bleeding occurs into the individual's joints and muscles, which can damage organs

15   and tissues and may be life-threatening.  More than half of all patients with

16   hemophilia—about 60%—have the severe form of the disease.

17       100.   People with hemophilia can have a near-normal life expectancy, even

18   those with the severe form of the disease.  Hemophilia is a complex disorder, and

19   optimal treatment outcomes require collaboration between multiple health care

20   providers, including hematologists, orthopedists, physical therapists, nurses,

21   medical laboratory scientists, nutritionists, dentists, and genetic counselors.

22       101.   Individuals with hemophilia rely on factor therapies for their entire

23   lives.  The main medication to treat hemophilia A is concentrated factor VIII

24   product, sometimes simply called "factor."  While some factor products are made

25   from human-derived pools of donor-sourced plasma, approximately 75% of the

26   hemophilia community takes a recombinant factor product, which is developed in a

27   lab through the use of DNA technology.  These factor products are infused

28   intravenously through a vein in the arm or a port in the chest.

-26-

**COMPLAINT**

102.   Factor, which requires specialized storage and handling, is classified as a "specialty drug."  Most individuals self-infuse their medications at home, so factor is typically delivered directly to patients by specialty pharmacies that focus on providing services to patients with hemophilia and other chronic conditions. Unlike traditional pharmacies, specialty pharmacies provide a range of support services, including patient education, care coordination, assay management, and disease management.

103.   Hemophilia drugs are among the most expensive drugs in the country. The cost of medications can average $250,000 or more per year for one patient and can easily reach more than $1 million per year.  The total United States hemophilia drug market is estimated to be approximately $4.6 billion a year.

104.   In California alone, more than $195 million was spent on 145 children with hemophilia over a three-year period, not including rebates from drug companies.  The costs of one reported case reached $21 million per year for medications alone.[1]

105.   Approximately one third of adults and children living with hemophilia are covered by Medicaid.  According to Kaiser Family Foundation, Medicaid's three most expensive drugs per prescription are for hemophilia.  In 2015, Medicaid paid about $353 million for prescriptions of Advate, the most commonly prescribed blood-clotting medication for hemophilia.  In 2016, California's Medicaid program paid at least $205 million for hemophilia medications, excluding federal rebates.

106.   Because factor medication is so expensive and because federal health care programs reimburse factor medication prescriptions at high rates, such

---

[1] Barbara Feder Ostrov, "States Strive to Curb Costs for a Crucial – But Exorbitant – Hemophilia Treatment," California Healthline (Mar. 5, 2018), *available at* https://californiahealthline.org/news/states-strive-to-curb-costs-for-a-crucial-but-exorbitant-hemophilia-treatment/?utm_campaign=KHN%3A%20First%20Edition&utm_source=hs_email&utm_medium=email&utm_content=61138109&_hsenc=p2ANqtz-8zInVXNnWPS_1Nk1W1kZ-xC08b1AUPMQsUMYiT-LySGBUQqI0KozJ0AdqUZhOSISMHlViSWXGCEx KdzbWTLhbVtBl40-tyqwfoykz4eXDRdpBtX2o&_hsmi=61138109 (last accessed Sept. 6, 2018).

587256.1
587256.2

**COMPLAINT**

1    prescriptions are highly susceptible to fraud.

2    **VII.   FEDERAL HEALTH CARE PROGRAM AND PRIVATE INSURER**
     **REIMBURSMENT OF FACTOR MEDICATION**

3

4        107.   As described above, federal health care programs reimburse specialty

5    pharmacies for factor medication.

6        108.   With respect to Medicare, the hemophilia medication at issue in this

7    Complaint, which is self-administered by beneficiaries, is reimbursed by Medicare

8    Part B.  CMS Claims Processing Manual Chapter 17, § 80.4 - 80.4.1 – Billing for

9    Hemophilia Clotting Factors/Clotting Factor Furnishing Fee.

10       109.   When covered by Medicaid, the medication is reimbursed in

11   accordance with the methods specific to each state's Medicaid plan.

12       110.   TRICARE, CHAMPVA, the Federal Employee Health Benefit

13   Program, and other federal health care programs also reimburse the hemophilia

14   medication at issue in this Complaint, as do private insurers.

15       111.   Specialty pharmacies submit claims for reimbursement for factor

16   medication to federal health care programs and private insurers using CMS Form

17   1500.

18       112.   When billing federal health care programs, specialty pharmacies must

19   certify their compliance with the Anti-Kickback Statute on CMS Form 1500,

20   which states in relevant part "this claim . . . complies with all applicable Medicare

21   and/or Medicaid laws, regulations, and program instructions for payment including

22   but not limited to the Federal anti-kickback statute . . . ."

23       113.   The government relies on the express representations of specialty

24   pharmacies and other providers that they have complied with all Medicare and

25   Medicaid laws, including the Anti-Kickback Statute, when the government makes

26   its decision to pay claims.

27       114.   Similarly, private payors rely on the representations of specialty

28   pharmacies that they do not pay kickbacks to induce prescriptions of expensive

-28-

**COMPLAINT**

587256.1
587256.2

1  hemophilia factor medication.  In many instances, private payors will not

2  reimburse prescriptions that have been steered to a given pharmacy through

3  kickbacks.

4  **VIII. FACTUAL ALLEGATIONS**

5   115. As noted above, there are approximately 20,000 hemophilia patients

6  in the United States.  Because hemophilia is a genetic disorder, when one member

7  of a family has it, others in the family also frequently have hemophilia or are

8  carriers of the disease.  Consequently, hemophilia patients often know each other

9  and are part of a tight-knit community.  Non-profit organizations such as the

10  National Hemophilia Foundation and the Hemophilia Federation of America

11  promote that sense of community through a variety of programming and other

12  efforts.

13   116. As a result of the small size and strength of the community,

14  hemophilia patients are uniquely situated to refer friends and family members who

15  also have the disease to health care providers, including specialty pharmacies that

16  dispense factor medication.

17   117. BioMatrix exploits hemophilia patients' relationships by hiring them

18  as so-called Regional Care Coordinators ("RCCs").  RCCs' primary, if not sole,

19  purpose is to refer their friends and family to BioMatrix and BioMatrix Related

20  Pharmacies to fill factor medication prescriptions.  The number of BioMatrix

21  RCCs varies, but is currently approximately 30 – 50 people.

22   118. To conceal the relationship between BioMatrix and the RCCs,

23  BioMatrix nominally hires RCCs through a different entity, Pacific Health Group,

24  LLC ("PHG").  The sole purpose of PHG is to serve as the RCCs' nominal

25  employer and to refer patients to BioMatrix and BioMatrix Related Pharmacies.

26   119. RCC compensation is based on the number of patients each RCC

27  refers and the amount of factor medication the referred patients require.  Thus,

28  RCC compensation is directly tied to the volume and value of referrals the

-29-

**COMPLAINT**

587256.1
587256.2

1   individual RCCs generate for BioMatrix and BioMatrix Related Pharmacies.  RCC

2   compensation ranges from approximately $150,000 to $300,000 annually.

3       120.   RCCs who do not generate sufficient referrals are fired.  For example,

4   BioMatrix and PHG fired approximately 26 RCCs in or around February 2018

5   because they were not generating enough business for the Pharmacy Defendants.

6   BioMatrix, through PHG, hired other RCCs to replace those it had fired.

7       121.   BioMatrix pays RCCs to attend meetings of hemophilia patient

8   organizations.  During those meetings, the RCCs, at the direction of BioMatrix,

9   solicit patients to change the pharmacy they are currently using to fill their factor

10   medication to BioMatrix or a BioMatrix Related Pharmacy.  RCCs offer patients a

11   variety of inducements to switch pharmacies, including offering to make them

12   RCCs and pay them for more referrals.

13       122.   Recent examples of meetings used by BioMatrix RCCs to solicit

14   patients include: a "Family Education Weekend" at the Doubletree Chesterfield in

15   Chesterfield, Missouri on July 13-15, 2018; the "35th Annual Family Education

16   Symposium" at the Embassy Suites by Hilton WPB Central in West Palm Beach,

17   Florida on July 20-22, 2018; the Texas Bleeding Disorders Conference at the

18   Marriott Rivercenter in San Antonio, Texas on August 3-5, 2018; a "Back to

19   School Day" at the New York Marriott Downtown in New York, New York on

20   September 9, 2018, which BioMatrix also sponsored; and a series of holiday

21   parties, including the upcoming Snowflake Festival at the Santa Ana Zoo in Santa

22   Ana, California on December 8, 2018.

23       123.   As part of its scheme, BioMatrix and PHG also offer commercial

24   health insurance to RCCs.  However, to avoid arousing suspicion by having dozens

25   of beneficiaries with hemophilia on a single employer-sponsored group plan,

26   BioMatrix and PHG obtain individual health insurance plans, or, in some

27   instances, a variety of small group health insurance plans, for RCCs and their

28   spouses and dependents.  The annual cost of insuring an RCC and his or her

-30-

**COMPLAINT**

1   dependents was typically around $15,000 per person.

2       124.   In selecting commercial plans for RCCs, BioMatrix looks for plans

3   that cover factor medication and that allow beneficiaries to fill their prescriptions

4   through a BioMatrix pharmacy.

5       125.   Bruce Greenberg, the CEO of BioMatrix, manages PHG.  PHG has a

6   small number of non-RCC employees whose main function is to arrange for health

7   insurance for the RCCs.  The non-RCC employees receive paychecks issued by

8   PHG.  They do not work in the BioMatrix corporate office, but rather in a separate

9   location with Aron Leibowich, a manager of PHG.  The vast majority of PHG's

10  payroll is comprised of RCCs.

11      126.   Below is a partial list of RCCs for whom BioMatrix, through PHG,

12  arranged commercial insurance in 2018.

| Name | City | State | Zip Code | Total Number of Enrollees |
|---|---|---|---|---|
| Joshua Moore | Fairfield | California | 94534 | 2 |
| Isidro Ramirez | Vallejo | California | 94591 | 2 |
| Eric Burgeson | Naples | Florida | 34105 | 3 |
| Cesar Couri | Miami | Florida | 33165 | 3 |
| Juan Bruno De La Fuente | Coral Gables | Florida | 33134 | 1 |
| Foertsch (first name unknown) | Bradenton | Florida | 34209 | 3 |
| Jorge Gil-Sabina | Miramar | Florida | 33027 | 2 |
| Sebastian Heer | Weston | Florida | 33332 | 4 |
| Cody Klingmann | Wesley Chapel | Florida | 33544 | |
| Justin Lindhorst | Fort Lauderdale | Florida | 33308 | 1 |

**COMPLAINT**

587256.1
587256.2

| Brenda Montgomery-King | Deerfield Beach | Florida | 33441 | 2 |
|---|---|---|---|---|
| Willie Phillips | Miramar | Florida | 33023 | 5 |
| Daniel Vetter | Champaign | Illinois | 61822 | 5 |
| Enrique Morey | Indianapolis | Indiana | 46241 | 2 |
| Rex Hicks | Shawnee | Kansas | 66216 | 3 |
| Carri Nease | Essex | Maryland | 21221 | 3 |
| Ashmore (first name unknown) | Castine | Maine | 04421 | 3 |
| Justin Levesque | Portland | Maine | 04102 | 1 |
| William and/or Michael Nolan | Charlotte | North Carolina | 28277 | 5 |
| Sara Henderson | Lynch | Nebraska | 68746 | 6 |
| Felix Garcia | Rio Rancho | New Mexico | 87144 | 3 |
| Jacey Kelley-Gonzalez | Las Vegas | Nevada | 89116 | 6 |
| Sheila Biljes | Columbia Station | Ohio | 44028 | 6 |
| Zachary and/or Nathan Lambing | Cincinnati | Ohio | 45248 | 4 |
| Malik Salem | Hamilton | Ohio | 45011 | 5 |
| Paul Fatua | Ellwood City | Pennsylvania | 16117 | 1 |
| Dakota McMullen | Birdsboro | Pennsylvania | 19508 | 3 |
| David Tignor | Bethpage | Tennessee | 37022 | 4 |
| Dattoli (first name unknown) | Rockwall | Texas | 75087 | 1 |
| Shelby Smoak | Linden | Virginia | 22642 | 3 |
| Mason and/or Michelle Stielper | Culpeper | Virginia | 22701 | 3 |

-32-

**COMPLAINT**

| Matthew Stone | Manassas | Virginia | 20112 | 2 |
| Jeffrey Johnson | Camas | Washington | 98607 | 2 |

127.   Although RCC compensation and insurance were costly for BioMatrix, the company made far more from the business referred to them through the improper kickback scheme.  RCCs were expected to generate millions of dollars a year in business for the Pharmacy Defendants.  Even with compensation on the high-end of RCCs at around $300,000 annually, as well as the cost of insurance, the value of the referrals RCCs generated for the Pharmacy Defendants made the "investment" profitable, notwithstanding its illegality.

128.   While PHG was their nominal employer, RCCs' business interactions were with BioMatrix.  BioMatrix instructed RCCs to refer hemophilia patients to its pharmacies.  BioMatrix communicated this directive through individual training of new RCCs, which was conducted by Cathleen Lombardo, Vice President of Sales, and Michael Collins, Senior Vice President of Sales.

129.   Many of the referred patients are Medicaid beneficiaries.  A substantial number the referred patients are beneficiaries of Medicare, TRICARE, or other federal, state, and municipal health programs.  Some of the referred patients, including many immediate family members of RCCs, are privately insured.

130.   Referred patients who are privately insured include residents of Illinois and California.  Those referred patients have submitted claims for reimbursement for factor medication to private insurance carriers in Illinois and California, either directly or through the Pharmacy Defendants on their behalf.  Claims for reimbursement for referred patients were generated by improper kickbacks and inducements and are not properly reimbursable.

131.   Referred patients who are federal health care program beneficiaries

-33-

**COMPLAINT**

1    have also submitted claims for reimbursement for factor medication to federal

2    health care programs, either directly or through the Pharmacy Defendants on their

3    behalf.  Claims for reimbursement for referred patients were generated by

4    improper kickbacks and inducements and are not properly reimbursable.

5        132.   On information and belief, referred patients also include beneficiaries

6    of state and local government health care programs who have submitted claims for

7    reimbursement for factor medication to state and local government health care

8    programs, either directly or through the Pharmacy Defendants on their behalf.

9    Claims for reimbursement for referred patients were generated by improper

10   kickbacks and inducements and are not properly reimbursable.

11       133.   As a condition of payment by all federal health care programs, a

12   pharmacy must comply with the Anti-Kickback Statute and must not offer or pay

13   anything of value to third parties in exchange for referring, arranging, or

14   recommending federal health care program patients for prescriptions to be filled by

15   the pharmacy and reimbursed by a federal health care program.

16       134.   In its provider agreements with CMS and its health insurance claim

17   forms, the Pharmacy Defendants falsely promised that they would comply with all

18   applicable fraud, waste, and abuse laws, which include the Anti-Kickback Statute

19   and the False Claims Act.  The Pharmacy Defendants' representations that they

20   would comply with all applicable fraud, waste, and abuse laws were material to

21   their continued participation in federal health care programs and to the

22   Governments' payment decisions.

23       135.   The Pharmacy Defendants knew that compliance with the Anti-

24   Kickback Statue was a condition of payment and a material requirement for

25   receiving federal health care program reimbursement.

26       136.   The Pharmacy Defendants, PHG, and the Private Equity Firm

27   Defendants have knowledge of the unlawful referral scheme.

28       137.   With respect to the Private Equity Firm Defendants, on November 28,

-34-

587256.1
587256.2                                    **COMPLAINT**

1    2016, Acon Investments issued a press release stating that it, along with Triton

2    Pacific, "had recently completed the purchase of BioMatrix Specialty Pharmacy,

3    L.L.C." The press release also stated that BioMatrix would "continue to be led by

4    CEO Bruce Greenberg and other members of the existing senior management

5    team, together with Tracy Finn who will serve as Executive Chairman."

6        138.   Representatives from Acon Investments and Triton Pacific, including

7    Tracy Finn, regularly participated in BioMatrix board meetings, which took place

8    approximately once per month.  Relator also attended those meetings, along with

9    Bruce Greenberg; Malcom Redman, BioMatrix Associate National Contracts

10   Manager; Arlan Randall, BioMatrix National Account Manager; Ned Yasumoto,

11   BioMatrix National Account Manager; Alan Hymowitz, BioMatrix National

12   Account Manager; and Aron Leibowich, a manager of PHG.

13       139.   In one of those meetings, on or around December 7, 2016, BioMatrix

14   management and its private investors—Acon Investments and Triton Pacific—

15   discussed potential pharmacies the company could acquire, including Elwyn.  A

16   PowerPoint presentation for the December 7 meeting describes BioMatrix's "Key

17   Corporate Objectives for 2017: Successful M&A Activity."  Among the ways to

18   achieve success, BioMatrix listed "Referral Source Relationships" under the sub-

19   heading "Capture Synergies."  All participants in the board meeting—including

20   representatives from Acon Investments and Triton Pacific—understood that

21   "referral source relationships" referred to RCCs whom BioMatrix, through PHG,

22   paid to recruit hemophilia patients.  The meeting participants further knew that the

23   purpose of acquiring more pharmacies was to expand the unlawful referral scheme.

24   ///

25   ///

26   ///

27   ///

28   ///

**COMPLAINT**

587256.1
587256.2

## IX.   CAUSES OF ACTION

### Count I

### Federal False Claims Act

### 31 U.S.C. § 3729(a)(1)(A)-(C)

140.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as though fully set forth herein.

141.   This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729, et seq. as amended.

142.   By virtue of the acts described above, Defendants have knowingly presented or caused to be presented false or fraudulent claims for payment or approval, including, but not limited to, claims paid by Medicare, Medicaid, TRICARE, CHAMPVA, and the Federal Employee Health Benefit Program.

143.   By virtue of the acts described above, Defendants have knowingly made, used, caused to be made, or caused to be used false records or statements material to false or fraudulent claims.

144.   By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and took multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

145.   The United States, unaware of the falsity of the records, statements, and claims made or caused to be made by Defendants, has paid and continues to pay such false or fraudulent claims that would not be paid but for Defendant's illegal conduct.  The fact that the United States may pay for false or fraudulent claims subsequent to the filing of this action does not negate the materiality of the Defendants' wrongdoing and noncompliance.  Even though many, if not most, of the prescriptions for hemophilia medications are tainted by improper financial

-36-

1  inducements, some are legitimate, and the United States has no practical means of

2  discerning, on a prepayment basis, which prescriptions are tainted by kickbacks

3  and which are not.  In addition, because hemophilia medications are life-saving

4  drugs, a blanket suspension of payments to the Defendants could cause substantial

5  harm—and even fatalities.

6       146.   By reason of Defendants' acts, the United States has been damaged,

7  and continues to be damaged, in a substantial amount to be determined at trial.

8  The United States is entitled to three times the amount of damages it has sustained.

9       147.   Additionally, the United States is entitled to the maximum civil

10  penalty for each and every violation alleged herein.

11                           **Count II**

12                  **California False Claims Act**

13              **Cal. Gov't Code § 12651(a)(1)–(3)**

14       148.   Relator realleges and incorporates by reference the allegations

15  contained in paragraphs 1 through 139 above as though fully set forth herein.

16       149.   This is a claim for treble damages and penalties under the California

17  False Claims Act, Cal. Gov't Code §§ 12651(a)(1)-(3).

18       150.   By virtue of the acts described above, Defendants knowingly

19  presented, or caused to be presented, false or fraudulent claims to the State of

20  California and its political subdivisions for payment or approval, including, but not

21  limited to, claims paid by Medi-Cal, CalPERS (the state's public employee pension

22  fund that provides health plans to active and retired public employees), and any

23  other state or municipal healthcare programs.

24       151.   By virtue of the acts described above, Defendants knowingly made,

25  used, or caused to be made or used false records or statements material to false or

26  fraudulent claims.

27       152.   By virtue of the acts described above, Defendants have knowingly

28  conspired to present, or cause to be presented, false or fraudulent claims for

                                   -37-
                               **COMPLAINT**

1   payment or approval and to make, use, or cause to be made or used, false records

2   or statements material to false or fraudulent claims, and took multiple steps

3   individually and collectively to advance and execute the objectives of that

4   conspiracy.

5   153.   The State of California and its political subdivisions, unaware of the

6   falsity of the records, statements, and claims that Defendants made or caused to be

7   made, paid and continue to pay the claims that would not be paid but for

8   Defendants' illegal conduct.  The fact that the State of California and its political

9   subdivisions may pay for false or fraudulent claims subsequent to the filing of this

10  action does not negate the materiality of the Defendants' wrongdoing and

11  noncompliance.  Even though many, if not most, of the prescriptions for

12  hemophilia medications are tainted by improper financial inducements, some are

13  legitimate, and the State of California and its political subdivisions have no

14  practical means of discerning, on a prepayment basis, which prescriptions are

15  tainted by kickbacks and which are not.  In addition, because hemophilia

16  medications are life-saving drugs, a blanket suspension of payments to the

17  Defendants could cause substantial harm—and even fatalities.

18  154.   Defendants have damaged, and continue to damage, the State of

19  California and its political subdivisions in a substantial amount to be determined at

20  trial.  The State of California and its political subdivisions are entitled to three

21  times the amount of damages they have sustained.

22  155.   Additionally, the State of California and its political subdivisions are

23  entitled to the maximum civil penalty for each and every violation alleged herein.

24  ## Count III

25  ## California Insurance Frauds Prevention Act

26  ## Cal. Ins. Code § 1871.7

27  156.   Relator repeats and realleges each and every contained in paragraphs

28  1 through 139 above as through fully set forth herein.

-38-

587256.1
587256.2

157.   This is a claim for treble damages and penalties under the California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7, as amended (referred to in this Count as "the Act").  The Act provides for civil recoveries against persons who violate the provisions of the Act or the provisions of California Penal Code sections 549 or 550, including recovery of up to three times the amount of any fraudulent insurance claims, and fines of between $5,000 and $10,000 for each such claim.  Cal. Ins. Code § 1871.7(b).

158.   Subsection (e) of Cal. Ins. Code § 1871.7 provides for a qui tam civil action in order to create incentives for private individuals who are aware of fraud against insurers to help disclose and prosecute the fraud.  Cal. Ins. Code § 1871.1(e).  The qui tam provision was patterned after the Federal False Claims Act, 31 U.S.C. §§ 3729-32 and the California False Claims Act, Cal. Gov't Code §§ 12650 et seq.

159.   Subsection (b) of Cal. Ins. Code §1871.7 provides for civil recoveries against persons who violate the provisions of the Penal Code Sections 549 or 550.

160.   By virtue of the acts described in this Complaint, Defendants knowingly presented or caused to be presented, false or fraudulent claims for health care benefits, in violation of Penal Code § 550(a).

161.   By virtue of the acts described in this Complaint, Defendants also concealed and/or failed to disclose information that would have affected the rights of pharmacies to receive reimbursement for prescriptions, in violation of Penal Code § 550(b).

162.   By virtue of the acts described in this Complaint, Defendants knowingly employed "runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits . . . or to procure clients or patients to perform or obtain services or benefits under a contract of insurance," in violation of Cal. Ins. Code § 1871.7(a).

163.   Each claim for reimbursement that resulted from Defendants' illegal

-39-

587256.1
587256.2

1   practices represents a false or fraudulent record or statement, and a false or

2   fraudulent claim for payment.

3       164.   Private insurers, unaware of the falsity of the records, statements and

4   claims made or caused to be made by Defendants, paid and continue to pay the

5   claims that would not be paid but for Defendants' unlawful conduct.  The fact that

6   private insurers may pay for false or fraudulent claims subsequent to the filing of

7   this action does not negate the materiality of the Defendants' wrongdoing and

8   noncompliance.  Even though many, if not most, of the prescriptions for

9   hemophilia medications are tainted by improper financial inducements, some are

10  legitimate, and insurers have no practical means of discerning, on a prepayment

11  basis, which prescriptions are tainted by kickbacks and which are not.  In addition,

12  because hemophilia medications are life-saving drugs, a blanket suspension of

13  payments to the Defendants could cause substantial harm—and even fatalities.

14      165.   The State of California is entitled to receive three times the amount of

15  each claim for compensation submitted in violation of Cal. Ins. Code § 1871.7.

16  Additionally, the State of California is entitled to the maximum civil penalty for

17  each and every violation alleged herein.

18                              **Count IV**

19              **State of Colorado Medicaid False Claims Act**

20              **Colo. Rev. Stat. § 25.5-4-305(1)(a)-(b), (g)**

21      166.   Relator realleges and incorporates by reference the allegations

22  contained in paragraphs 1 through 139 above as though fully set forth herein.

23      167.   This is a claim for treble damages and penalties under the Colorado

24  Medicaid False Claims Act.

25      168.   By virtue of the acts described above, Defendants knowingly

26  presented, or caused to be presented, false or fraudulent claims to the Colorado

27  state government for payment or approval.

28      169.   By virtue of the acts described above, Defendants knowingly made,

-40-

**COMPLAINT**

1    used, or caused to be made or used false records or statements and omitted material

2    facts to induce the State of Colorado to approve and pay false or fraudulent claims.

3        170.   By virtue of the acts described above, Defendants have knowingly

4    conspired to present, or cause to be presented, false or fraudulent claims for

5    payment or approval and to make, use, or cause to be made or used, false records

6    or statements material to false or fraudulent claims, and took multiple steps

7    individually and collectively to advance and execute the objectives of that

8    conspiracy.

9        171.   The State of Colorado, unaware of the falsity of the records,

10   statements, and claims that Defendants made or caused to be made, paid and

11   continues to pay the claims that would not be paid but for Defendants' illegal

12   conduct.  The fact that the State of Colorado may pay for false or fraudulent claims

13   subsequent to the filing of this action does not negate the materiality of the

14   Defendants' wrongdoing and noncompliance.  Even though many, if not most, of

15   the prescriptions for hemophilia medications are tainted by improper financial

16   inducements, some are legitimate, and the State of Colorado has no practical

17   means of discerning, on a prepayment basis, which prescriptions are tainted by

18   kickbacks and which are not.  In addition, because hemophilia medications are life-

19   saving drugs, a blanket suspension of payments to the Defendants could cause

20   substantial harm—and even fatalities.

21       172.   Defendants have damaged, and continue to damage, the State of

22   Colorado in a substantial amount to be determined at trial.  The State of Colorado

23   is entitled to full restitution in the amount of all payments, moneys, and earnings

24   found by the Court to have been received or retained by Defendants in violation of

25   Colo. Rev. Stat. § 25.5-4-305.

26       173.   Additionally, the State of Colorado is entitled to two times the amount

27   of damages it has sustained, and to the maximum civil penalty for each and every

28   violation alleged herein.

-41-

**COMPLAINT**

## Count V

## Connecticut False Claims Act

## Conn. Gen. Stat. § 4-275 (1)–(3)

174.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as though fully set forth herein.

175.    This is a claim for treble damages and penalties under the Connecticut False Claims Act.

176.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the Connecticut state government for payment or approval, including, but not limited to, claims paid by Office of the State Comptroller for medical benefits for state employees, the state Medicaid Program, and any other state-administered health or human services program.

177.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

178.    By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and took multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

179.    The State of Connecticut, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.  The fact that the State of Connecticut may pay for false or fraudulent claims subsequent to the filing of this action does not negate the materiality of the Defendants' wrongdoing and noncompliance.  Even though many, if not most, of

-42-

1   the prescriptions for hemophilia medications are tainted by improper financial

2   inducements, some are legitimate, and the State of Connecticut has no practical

3   means of discerning, on a prepayment basis, which prescriptions are tainted by

4   kickbacks and which are not.  In addition, because hemophilia medications are life-

5   saving drugs, a blanket suspension of payments to the Defendants could cause

6   substantial harm—and even fatalities.

7        180.   Defendants have damaged, and continue to damage, the State of

8   Connecticut in a substantial amount to be determined at trial.  The State of

9   Connecticut is entitled to three times the amount of damages it has sustained.

10       181.   Additionally, the State of Connecticut is entitled to the maximum civil

11  penalty for each and every violation alleged herein.

## Count VI

## Delaware False Claims and Reporting Act

## Del. Code Ann. tit. 6, § 1201(a)(1)–(3)

15       182.   Relator realleges and incorporates by reference the allegations

16  contained in paragraphs 1 through 139 above as though fully set forth herein.

17       183.   This is a claim for treble damages and penalties under the Delaware

18  False Claims and Reporting Act.

19       184.   By virtue of the acts described above, Defendants knowingly

20  presented, or caused to be presented, false or fraudulent claims to the Delaware

21  state government or its political subdivisions for payment or approval, including,

22  but not limited to, claims paid by the Delaware Group Health Insurance Program

23  ("GHIP"), the Delaware Medicaid program, and any other state or municipal health

24  care programs.

25       185.   By virtue of the acts described above, Defendants knowingly made,

26  used, or caused to be made or used false records or statements material to false or

27  fraudulent claims.

28       186.   By virtue of the acts described above, Defendants have knowingly

-43-

**COMPLAINT**

1  conspired to present, or cause to be presented, false or fraudulent claims for

2  payment or approval and to make, use, or cause to be made or used, false records

3  or statements material to false or fraudulent claims, and took multiple steps

4  individually and collectively to advance and execute the objectives of that

5  conspiracy.

6      187.   The State of Delaware, unaware of the falsity of the records,

7  statements, and claims that Defendants made or caused to be made, paid and

8  continues to pay the claims that would not be paid but for Defendants' illegal

9  conduct.  The fact that the State of Delaware may pay for false or fraudulent claims

10  subsequent to the filing of this action does not negate the materiality of the

11  Defendants' wrongdoing and noncompliance.  Even though many, if not most, of

12  the prescriptions for hemophilia medications are tainted by improper financial

13  inducements, some are legitimate, and the State of Delaware has no practical

14  means of discerning, on a prepayment basis, which prescriptions are tainted by

15  kickbacks and which are not.  In addition, because hemophilia medications are life-

16  saving drugs, a blanket suspension of payments to the Defendants could cause

17  substantial harm—and even fatalities.

18      188.   Defendant have damaged, and continue to damage, the State of

19  Delaware in a substantial amount to be determined at trial, and the State is entitled

20  to three times the amount of damages it has sustained.

21      189.   Additionally, the State of Delaware is entitled to the maximum civil

22  penalty for each and every violation alleged herein.

### Count VII

### District of Columbia False Claims Act

### D.C. Code Ann. § 2-381.02(a)(1)-(2), (7)

26      190.   Relator realleges and incorporates by reference the allegations

27  contained in paragraphs 1 through 139 above as though fully set forth herein.

28      191.   This is a claim for treble damages and penalties under the District of

-44-

**COMPLAINT**

1     Columbia False Claims Act, D.C. Code Ann. § 2-381.02(a)(1)-(2) and (7).

2        192.   By virtue of the acts described above, Defendants knowingly

3 presented or caused to be presented, false or fraudulent claims for payment or

4 approval, including, but not limited to, the District's health benefit plans for public

5 employees, teachers, and retirees, and the District's Medicaid program.

6        193.   By virtue of the acts described above, Defendants knowingly made,

7 used, or caused to be made or used false records or statements material to false or

8 fraudulent claims.

9        194.   By virtue of the acts described above, Defendants have knowingly

10 conspired to present, or cause to be presented, false or fraudulent claims for

11 payment or approval and to make, use, or cause to be made or used, false records

12 or statements material to false or fraudulent claims, and took multiple steps

13 individually and collectively to advance and execute the objectives of that

14 conspiracy.

15        195.   The District of Columbia, unaware of the falsity of the records,

16 statements, and claims made, used, presented, or caused to be made, used, or

17 presented by Defendants, paid and continues to pay the claims that would not be

18 paid but for Defendants' unlawful conduct.  The fact that the District of Columbia

19 may pay for false or fraudulent claims subsequent to the filing of this action does

20 not negate the materiality of the Defendants' wrongdoing and noncompliance.

21 Even though many, if not most, of the prescriptions for hemophilia medications are

22 tainted by improper financial inducements, some are legitimate, and the District of

23 Columbia has no practical means of discerning, on a prepayment basis, which

24 prescriptions are tainted by kickbacks and which are not.  In addition, because

25 hemophilia medications are life-saving drugs, a blanket suspension of payments to

26 the Defendants could cause substantial harm—and even fatalities.

27        196.   By reason of Defendants' acts, the District of Columbia has been

28 damaged, and continues to be damaged, in a substantial amount to be determined at

1    trial and therefore is entitled to treble damages.

2        197.   Additionally, the District of Columbia is entitled to the maximum

3    civil penalty for each and every violation alleged herein.

4                              **Count VIII**

5                        **Florida False Claims Act**

6                    **Fla. Stat. Ann. § 68.082(2)(a)-(c)**

7        198.   Relator realleges and incorporates by reference the allegations

8    contained in paragraphs 1 through 139 above as though fully set forth herein.

9        199.   This is a claim for treble damages and penalties under the Florida

10   False Claims Act, Fla. Stat. Ann. §§ 68.081 through 68.092.

11       200.   By virtue of the acts described above, Defendants knowingly

12   presented or caused to be presented, false or fraudulent claims for payment or

13   approval, including, but not limited to, claims presented to Florida's State Group

14   Insurance program and the Florida Medicaid program.

15       201.   By virtue of the acts described above, Defendants knowingly made,

16   used, or caused to be made or used, false records or statements, material to false or

17   fraudulent claims.

18       202.   By virtue of the acts described above, Defendants have knowingly

19   conspired to present, or cause to be presented, false or fraudulent claims for

20   payment or approval and to make, use, or cause to be made or used, false records

21   or statements material to false or fraudulent claims, and took multiple steps

22   individually and collectively to advance and execute the objectives of that

23   conspiracy.

24       203.   The State of Florida, unaware of the falsity of the records, statements,

25   and claims made, used, presented, or caused to be made, used, or presented by

26   Defendants, paid and continues to pay the claims that would not be paid but for

27   Defendants' unlawful conduct.  The fact that the State of Florida may pay for false

28   or fraudulent claims subsequent to the filing of this action does not negate the

-46-

1    materiality of the Defendants' wrongdoing and noncompliance.  Even though

2    many, if not most, of the prescriptions for hemophilia medications are tainted by

3    improper financial inducements, some are legitimate, and the State of Florida has

4    no practical means of discerning, on a prepayment basis, which prescriptions are

5    tainted by kickbacks and which are not.  In addition, because hemophilia

6    medications are life-saving drugs, a blanket suspension of payments to the

7    Defendants could cause substantial harm—and even fatalities.

8        204.   By reason of Defendants' acts, the State of Florida has been damaged,

9    and continues to be damaged, in a substantial amount to be determined at trial and

10   therefore is entitled to treble damages.

11       205.   Additionally, the State of Florida is entitled to the maximum civil

12   penalty for each and every violation alleged herein.

13                                **Count IX**

14   **Georgia Taxpayer Protection Against False Claims Act and False Medicaid**
                                **Claims Act**
15

16   **Ga. Code Ann. § 23-3-121(a)(1)-(3) and Ga. Code Ann. § 49-4-168.1(1)-(3)**

17       206.   Relator realleges and incorporates by reference the allegations

18   contained in paragraphs 1 through 139 above as though fully set forth herein.

19       207.   This is a claim for treble damages and penalties under the Georgia

20   Taxpayer Protection Against False Claims Act and the Georgia False Medicaid

21   Claims Act.

22       208.   By virtue of the acts described above, Defendants knowingly

23   presented or caused to be presented, false or fraudulent claims for payment or

24   approval.

25       209.   By virtue of the acts described above, Defendants knowingly made,

26   used, or caused to be made or used, false records or statements, material to false or

27   fraudulent claims.

28       210.   By virtue of the acts described above, Defendants have knowingly

-47-
**COMPLAINT**

1  conspired to present, or cause to be presented, false or fraudulent claims for

2  payment or approval and to make, use, or cause to be made or used, false records

3  or statements material to false or fraudulent claims, and took multiple steps

4  individually and collectively to advance and execute the objectives of that

5  conspiracy.

6      211.   The State of Georgia, unaware of the falsity of the records, statements,

7  and claims made, used, presented, or caused to be made, used, or presented by

8  Defendants, paid and continues to pay the claims that would not be paid but for

9  Defendants' unlawful conduct.  The fact that the State of Georgia may pay for false

10  or fraudulent claims subsequent to the filing of this action does not negate the

11  materiality of the Defendants' wrongdoing and noncompliance.  Even though

12  many, if not most, of the prescriptions for hemophilia medications are tainted by

13  improper financial inducements, some are legitimate, and the State of Georgia has

14  no practical means of discerning, on a prepayment basis, which prescriptions are

15  tainted by kickbacks and which are not.  In addition, because hemophilia

16  medications are life-saving drugs, a blanket suspension of payments to the

17  Defendants could cause substantial harm—and even fatalities.

18      212.   By reason of Defendants' acts, the State of Georgia has been

19  damaged, and continues to be damaged, in a substantial amount to be determined at

20  trial.  The State of Georgia is entitled to three times the amount of damages it has

21  sustained.

22      213.   Additionally, the State of Georgia is entitled to the maximum civil

23  penalty for each and every violation alleged herein.

### Count X

### Hawaii False Claims Act

### Haw. Rev. Stat. § 661-21(a)(1)–(2), (8)

27      214.   Relator realleges and incorporates by reference the allegations

28  contained in paragraphs 1 through 139 above as though fully set forth herein.

-48-

215.   This is a claim for treble damages and penalties under the Hawaii False Claims Act.

216.   By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Hawaii for payment or approval, including, but not limited to, the Hawaii Employer-Union Health Benefits Trust Fund (EUTF), which runs the health and prescription drug plans for state employees and retirees, the Hawaii Medicaid program, and any other state or county health care programs.

217.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

218.   By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and took multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

219.   The State of Hawaii, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continue to pay the claims that would not be paid but for Defendants' illegal conduct.  The fact that the State of Hawaii may pay for false or fraudulent claims subsequent to the filing of this action does not negate the materiality of the Defendants' wrongdoing and noncompliance.  Even though many, if not most, of the prescriptions for hemophilia medications are tainted by improper financial inducements, some are legitimate, and the State of Hawaii have no practical means of discerning, on a prepayment basis, which prescriptions are tainted by kickbacks and which are not.  In addition, because hemophilia medications are life-saving drugs, a blanket suspension of payments to the Defendants could cause substantial harm—and even

-49-

1   fatalities.

2       220.   Defendants have damaged, and continue to damage, the State of

3   Hawaii in a substantial amount to be determined at trial, and the State is entitled to

4   three times the amount of damages it has sustained.

5       221.   Additionally, the State of Hawaii is entitled to the maximum civil

6   penalty for each and every violation alleged herein.

7   **Count XI**

8   **Illinois False Claims Act**

9   **740 Ill. Comp. Stat.  175/3(a)(1)(A)–(C)**

10      222.   Relator realleges and incorporates by reference the allegations

11  contained in paragraphs 1 through 139 above as though fully set forth herein.

12      223.   This is a claim for treble damages and penalties under the Illinois

13  False Claims Act.

14      224.   By virtue of the acts described above, Defendants knowingly

15  presented, or caused to be presented, false or fraudulent claims to the State of

16  Illinois for payment or approval, including but not limited to, the Department of

17  Central Management Services, which funds health and pharmacy benefits for

18  teachers and state and municipal employees, the Illinois Medicaid Program, and

19  any other state or municipal health care programs.

20      225.   By virtue of the acts described above, Defendants knowingly made,

21  used, or caused to be made or used false records or statements material to false or

22  fraudulent claims.

23      226.   By virtue of the acts described above, Defendants have knowingly

24  conspired to present, or cause to be presented, false or fraudulent claims for

25  payment or approval and to make, use, or cause to be made or used, false records

26  or statements material to false or fraudulent claims, and took multiple steps

27  individually and collectively to advance and execute the objectives of that

28  conspiracy.

-50-

**COMPLAINT**

227. The State of Illinois, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

228. Defendants have damaged, and continue to damage, the State of Illinois in a substantial amount to be determined at trial. The State of Illinois is entitled to three times the amount of damages it has sustained.

229. Additionally, the State of Illinois is entitled to the maximum civil penalty for each and every violation alleged herein.

## Count XII

## Illinois Insurance Claims Fraud Prevention Act

## 740 Ill. Comp. Stat. § 92

230. Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as though fully set forth herein.

231. This is a claim for treble damages and penalties under the Illinois Insurance Fraud Prevention Act, 740 Ill. Comp. Stat. 92 (referred to in this Count as "the Act").

232. Subsection 5(b) of the Act provides:

> A person who violates any provision of this Act … or Section 17-10.5 of the … Criminal Code of 2012 … shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than $5,000 nor more than $10,000, plus an assessment of not more than 3 times the amount of each claim for compensation under a contract of insurance.

233. Section 17-10.5 of the Illinois Criminal Code, referenced in the above-quoted section, provides criminal penalties for any person who commits the offense of insurance fraud, defined in the statute as follows:

> A person commits insurance fraud when he or she knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company or self-insured entity by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company .
> . . .

-51-

**COMPLAINT**

1    720 Ill. Comp. Stat. 17-10.5(a).

2    234.   Subsection 15(a) of the Act provides for a qui tam civil action to
3    create incentives for private individuals to prosecute violations of the statute.
4    Subsection 15(a) provides: "An interested person, including an insurer, may bring
5    a civil action for a violation of this Act for the person and for the State of Illinois.
6    The action shall be brought in the name of the State." 740 Ill. Comp. Stat.
7    92/15(a).

8    235.   By virtue of the conduct described in this Complaint, Defendants
9    committed the following acts, or aided and abetted the commission of the
10   following acts, in violation of the Act: knowingly obtained, attempted to obtain,
11   and/or caused to be obtained, by deception, control over the property of an
12   insurance company or self-insured entity by the making of a false claim and by
13   causing a false claim to be made on a policy of insurance issued by an insurance
14   company, in violation of 740 Ill. Comp. Stat. 92/5(b) and 720 Ill. Comp. Stat. 17-
15   10.5 (a).

16   236.   As a result of such conduct, Defendants have received illegal profits
17   to which they were not entitled, at the expense of insurers and at the expense of the
18   people of the State of Illinois, in a substantial amount to be determined at trial.

19   237.   The State of Illinois is entitled to receive three times the amount of
20   each claim for compensation submitted by Defendants in violation of 740 Ill.
21   Comp. Stat. 92.  Additionally, the Illinois state government is entitled to the
22   maximum civil penalty for each and every violation alleged herein.

## Count XIII

### Indiana False Claims and Whistleblower Protection Act and Indiana Medicaid False Claims and Whistleblower Protection Act

### Ind. Code § 5-11-5.5-2(b)(1)-(2), (7) and § 5-11-5.7-2(a)(1)-(2), (7)

238.   Relator realleges and incorporates by reference the allegations
contained in paragraphs 1 through 139 above as though fully set forth herein.

-52-

**COMPLAINT**

587256.1
587256.2

239.   This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act and the Indiana Medicaid False Claims and Whistleblower Protection Act.

240.   By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims for payment or approval including, but not limited to, claims submitted to the state-run health and prescription plans for state employees and retirees, the Indiana Medicaid program, and any other state or municipal health care programs.

241.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

242.   By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and took multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

243.   The State of Indiana, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants unlawful conduct.  The fact that the State of Indiana may pay for false or fraudulent claims subsequent to the filing of this action does not negate the materiality of the Defendants' wrongdoing and noncompliance.  Even though many, if not most, of the prescriptions for hemophilia medications are tainted by improper financial inducements, some are legitimate, and the State of Indiana has no practical means of discerning, on a prepayment basis, which prescriptions are tainted by kickbacks and which are not.  In addition, because hemophilia medications are life-saving drugs, a blanket suspension of payments to the

-53-

**COMPLAINT**

1    Defendants could cause substantial harm—and even fatalities.

2        244.   By reason of Defendants' acts, the State of Indiana has been damaged,

3    and continues to be damaged, in a substantial amount to be determined at trial.

4    The State of Indiana is entitled to three times the amount of damages it has

5    sustained.

6        245.   Additionally, the Indiana state government is entitled to the maximum

7    civil penalty for each and every violation alleged herein.

8                              **Count XIV**

9                           **Iowa False Claims Act**

10                        **Iowa Code § 685.2(1)(a)–(c)**

11       246.   Relator realleges and incorporates by reference the allegations

12   contained in paragraphs 1 through 139 above as though fully set forth herein.

13       247.   This is a claim for treble damages and penalties under the Iowa False

14   Claims Act.

15       248.   By virtue of the acts described above, Defendants knowingly

16   presented, or caused to be presented, false or fraudulent claims to the State of Iowa

17   for payment or approval, including, but not limited to, the Iowa Medicaid program

18   and any other state or municipal health care programs.

19       249.   By virtue of the acts described above, Defendants knowingly made,

20   used, or caused to be made or used false records or statements material to false or

21   fraudulent claims.

22       250.   By virtue of the acts described above, Defendants have knowingly

23   conspired to present, or cause to be presented, false or fraudulent claims for

24   payment or approval and to make, use, or cause to be made or used, false records

25   or statements material to false or fraudulent claims, and took multiple steps

26   individually and collectively to advance and execute the objectives of that

27   conspiracy.

28       251.   The State of Iowa, unaware of the falsity of the records, statements,

587256.1
587256.2

1    and claims that Defendants made or caused to be made, paid and continues to pay

2    the claims that would not be paid but for Defendants' illegal conduct.  The fact that

3    the State of Iowa may pay for false or fraudulent claims subsequent to the filing of

4    this action does not negate the materiality of the Defendants' wrongdoing and

5    noncompliance.  Even though many, if not most, of the prescriptions for

6    hemophilia medications are tainted by improper financial inducements, some are

7    legitimate, and the State of Iowa has no practical means of discerning, on a

8    prepayment basis, which prescriptions are tainted by kickbacks and which are not.

9    In addition, because hemophilia medications are life-saving drugs, a blanket

10   suspension of payments to the Defendants could cause substantial harm—and even

11   fatalities.

12          252.   Defendants have damaged, and continue to damage, the State of Iowa

13   in a substantial amount to be determined at trial.  The State of Iowa is entitled to

14   three times the amount of damages it has sustained.

15          253.   Additionally, the State of Iowa is entitled to the maximum civil

16   penalty for each and every violation alleged herein.

### Count XV

### Louisiana Medical Assistance Programs Integrity Law

### La. Rev. Stat. § 46:438.3(A)–(B), (D)

20          254.   Relator realleges and incorporates by reference the allegations

21   contained in paragraphs 1 through 139 above as though fully set forth herein.

22          255.   This is a claim for treble damages and penalties under the Louisiana

23   Medical Assistance Programs Integrity Law.

24          256.   By virtue of the acts described above, Defendants knowingly

25   presented, or caused to be presented, false or fraudulent claims to the State of

26   Louisiana for payment or approval, including, but not limited to, the Louisiana

27   Medicaid program and any other medical assistance program.

28          257.   By virtue of the acts described above, Defendants knowingly engaged

-55-

**COMPLAINT**

1    in misrepresentations or made, used, or caused to be made or used false records or

2    statements material to false or fraudulent claims.

3         258.   By virtue of the acts described above, Defendants have knowingly

4    conspired to defraud, or attempt to defraud, Louisiana medical assistance programs

5    through misrepresentation or by obtaining, or attempting to obtain, payment for

6    false or fraudulent claims.

7         259.   The State of Louisiana, unaware of Defendants' misrepresentations or

8    the falsity of the records, statements, and claims that Defendants made or caused to

9    be made, paid and continues to pay the claims that would not be paid but for

10   Defendants' illegal conduct.  The fact that the State of Louisiana may pay for false

11   or fraudulent claims subsequent to the filing of this action does not negate the

12   materiality of the Defendants' wrongdoing and noncompliance.  Even though

13   many, if not most, of the prescriptions for hemophilia medications are tainted by

14   improper financial inducements, some are legitimate, and the State of Louisiana

15   has no practical means of discerning, on a prepayment basis, which prescriptions

16   are tainted by kickbacks and which are not.  In addition, because hemophilia

17   medications are life-saving drugs, a blanket suspension of payments to the

18   Defendants could cause substantial harm—and even fatalities.

19        260.   Defendants have damaged, and continue to damage, the State of

20   Louisiana in a substantial amount to be determined at trial.  The State of Louisiana

21   is entitled to three times the amount of damages it has sustained.

22        261.   Additionally, the State of Louisiana is entitled to the maximum civil

23   monetary penalty for each and every violation alleged herein.

### Count XVI

### Maryland False Claims Act and Maryland False Health Claims Act

### Md. Gen. Provis. § 8-102(b)(1)-(3) and Md. Code Ann., Health-Gen. § 2-602(a)(1)–(3)

28        262.   Relator realleges and incorporates by reference the allegations

-56-

**COMPLAINT**

587256.1
587256.2

1    contained in paragraphs 1 through 139 above as though fully set forth herein.

2        263.   This is a claim for treble damages and penalties under the Maryland

3    False Claims Act and the Maryland False Health Claims Act.

4        264.   By virtue of the acts described above, Defendants knowingly

5    presented, or caused to be presented, false or fraudulent claims to Maryland

6    governmental entities or Maryland health plans for payment or approval.

7        265.   By virtue of the acts described above, Defendants knowingly made,

8    used, or caused to be made or used false records or statements material to false or

9    fraudulent claims.

10       266.   By virtue of the acts described above, Defendants have knowingly

11   conspired to present, or cause to be presented, false or fraudulent claims for

12   payment or approval and to make, use, or cause to be made or used, false records

13   or statements material to false or fraudulent claims, and took multiple steps

14   individually and collectively to advance and execute the objectives of that

15   conspiracy.

16       267.   Maryland governmental entities and health plans, unaware of the

17   falsity of the records, statements, and claims that Defendants made or caused to be

18   made, paid and continues to pay the claims that would not be paid but for

19   Defendants' illegal conduct.  The fact that Maryland governmental entities and

20   health plans may pay for false or fraudulent claims subsequent to the filing of this

21   action does not negate the materiality of the Defendants' wrongdoing and

22   noncompliance.  Even though many, if not most, of the prescriptions for

23   hemophilia medications are tainted by improper financial inducements, some are

24   legitimate, and Maryland governmental entities and health plans have no practical

25   means of discerning, on a prepayment basis, which prescriptions are tainted by

26   kickbacks and which are not.  In addition, because hemophilia medications are life-

27   saving drugs, a blanket suspension of payments to the Defendants could cause

28   substantial harm—and even fatalities.

-57-

1    268.   Defendants have damaged, and continue to damage, Maryland

2    governmental entities and health plans in a substantial amount to be determined at

3    trial.  Maryland is entitled to three times the amount of damages its governmental

4    entities and health plans have sustained.

5    269.   Additionally, Maryland is entitled to the maximum civil penalty for

6    each and every violation alleged herein.

### Count XVII

### Massachusetts False Claims Law

### Mass. Gen. Laws ch. 12, § 5B(a)(1)–(3)

10    270.   Relator realleges and incorporates by reference the allegations

11    contained in paragraphs 1 through 139 above as though fully set forth herein.

12    271.   This is a claim for treble damages and penalties under the

13    Massachusetts False Claims Law.

14    272.   By virtue of the acts described above, Defendants knowingly

15    presented, or caused to be presented, false or fraudulent claims to the

16    Commonwealth of Massachusetts for payment or approval, including, but not

17    limited to, claims paid by the Massachusetts Group Insurance Commission

18    ("GIC"), which provides health insurance to state and municipal employees and

19    retirees, the Massachusetts Medicaid program, and any other state or municipal

20    health care programs.

21    273.   By virtue of the acts described above, Defendants knowingly made,

22    used, or caused to be made or used false records or statements material to false or

23    fraudulent claims.

24    274.   By virtue of the acts described above, Defendants have knowingly

25    conspired to present, or cause to be presented, false or fraudulent claims for

26    payment or approval and to make, use, or cause to be made or used, false records

27    or statements material to false or fraudulent claims, and took multiple steps

28    individually and collectively to advance and execute the objectives of that

-58-

**COMPLAINT**

1   conspiracy.

2   275.   The Commonwealth of Massachusetts, unaware of the falsity of the

3   records, statements, and claims that Defendants made or caused to be made, paid

4   and continues to pay the claims that would not be paid but for Defendants' illegal

5   conduct.  The fact that the Commonwealth of Massachusetts may pay for false or

6   fraudulent claims subsequent to the filing of this action does not negate the

7   materiality of the Defendants' wrongdoing and noncompliance.  Even though

8   many, if not most, of the prescriptions for hemophilia medications are tainted by

9   improper financial inducements, some are legitimate, and the Commonwealth of

10   Massachusetts has no practical means of discerning, on a prepayment basis, which

11   prescriptions are tainted by kickbacks and which are not.  In addition, because

12   hemophilia medications are life-saving drugs, a blanket suspension of payments to

13   the Defendants could cause substantial harm—and even fatalities.

14   276.   Defendants have damaged, and continue to damage, the

15   Commonwealth of Massachusetts in a substantial amount to be determined at trial.

16   The Commonwealth of Massachusetts is entitled to three times the amount of

17   damages it has sustained.

18   277.   Additionally, the Commonwealth of Massachusetts is entitled to the

19   maximum civil penalty for each and every violation alleged herein.

## Count XVIII

## Michigan Medicaid False Claim Act

## Mich. Comp. Laws § 400.603(1)-(2), § 400.607(1) and § 400.606(1)

23   278.   Relator realleges and incorporates by reference the allegations

24   contained in paragraphs 1 through 139 above as though fully set forth herein.

25   279.   This is a claim for treble damages and penalties under the Michigan

26   Medicaid False Claims Act.

27   280.   By virtue of the acts described above, Defendants knowingly made or

28   caused to be made false statements or false representations of material fact in

-59-

**COMPLAINT**

1   applications for Medicaid benefits or for use in determining rights to Medicaid

2   benefits.

3         281.   By virtue of the acts described above, Defendants knowingly

4   presented, or caused to be presented, false or fraudulent claims to the State of

5   Michigan for payment or approval.

6         282.   By virtue of the acts described above, Defendants have knowingly

7   entered into an agreements, combination, or conspiracy to defraud the State of

8   Michigan by obtaining or aiding another to obtain payment or allowance of false

9   claims.

10        283.   The State of Michigan, unaware of the falsity of the records,

11   statements, and claims that Defendants made or caused to be made, paid and

12   continues to pay the claims that would not be paid but for Defendants' illegal

13   conduct.  The fact that the State of Michigan may pay for false or fraudulent claims

14   subsequent to the filing of this action does not negate the materiality of the

15   Defendants' wrongdoing and noncompliance.  Even though many, if not most, of

16   the prescriptions for hemophilia medications are tainted by improper financial

17   inducements, some are legitimate, and the State of Michigan has no practical

18   means of discerning, on a prepayment basis, which prescriptions are tainted by

19   kickbacks and which are not.  In addition, because hemophilia medications are life-

20   saving drugs, a blanket suspension of payments to the Defendants could cause

21   substantial harm—and even fatalities.

22        284.   Defendants have damaged, and continue to damage, the State of

23   Michigan in a substantial amount to be determined at trial.  The State of Michigan

24   is entitled to three times the amount of damages it has sustained.

25        285.   Additionally, the Michigan state government is entitled to the

26   maximum civil penalty for each and every violation alleged herein.

27   ///

28   ///

**Count XIX**

**Minnesota False Claims Act**

**Minn. Stat. § 15C.02(a)(1)-(3)**

286.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as though fully set forth herein.

287.   This is a claim for treble damages and penalties under the Minnesota False Claims Act.

288.   By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims for payment or approval to the State of Minnesota, including, but not limited to, claims paid by the Minnesota State Employee Groups Insurance Program ("SEGIP"), the Minnesota Medicaid program, and any other state or municipal health care programs.

289.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims.

290.   By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and took multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

291.   The State of Minnesota, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.  The fact that the State of Minnesota may pay for false or fraudulent claims subsequent to the filing of this action does not negate the materiality of the Defendants' wrongdoing and noncompliance. Even though many, if not most, of the prescriptions for hemophilia medications are

1  tainted by improper financial inducements, some are legitimate, and the State of

2  Minnesota has no practical means of discerning, on a prepayment basis, which

3  prescriptions are tainted by kickbacks and which are not.  In addition, because

4  hemophilia medications are life-saving drugs, a blanket suspension of payments to

5  the Defendants could cause substantial harm—and even fatalities.

6     292.   By reason of Defendants' acts, the State of Minnesota state

7  government has been damaged, and continues to be damaged, in a substantial

8  amount to be determined at trial and is entitled to three times the amount of

9  damages it has sustained.

10    293.   Additionally, the Minnesota state government is entitled to the

11  maximum civil penalty for each and every violation alleged herein.

## Count XX

## Montana False Claims Act

## Mont. Code Ann. § 17-8-403(1)(a)–(c)

15    294.   Relator realleges and incorporates by reference the allegations

16  contained in paragraphs 1 through 139 above as though fully set forth herein.

17    295.   This is a claim for treble damages and penalties under the Montana

18  False Claims Act.

19    296.   By virtue of the acts described above, Defendants knowingly

20  presented, or caused to be presented, false or fraudulent claims to a Montana

21  governmental entity for payment or approval, including, but not limited to, claims

22  paid by the Health Care & Benefits Division ("HCBD"), which manages the State

23  of Montana Benefit Plan, the Montana Medicaid program, and any other state or

24  municipal health care programs.

25    297.   By virtue of the acts described above, Defendants knowingly made,

26  used, or caused to be made or used false records or statements material to false or

27  fraudulent claims.

28    298.   By virtue of the acts described above, Defendants have knowingly

-62-

**COMPLAINT**

1    conspired to present, or cause to be presented, false or fraudulent claims for

2    payment or approval and to make, use, or cause to be made or used, false records

3    or statements material to false or fraudulent claims, and took multiple steps

4    individually and collectively to advance and execute the objectives of that

5    conspiracy.

6         299.   The State of Montana, unaware of the falsity of the records,

7    statements, and claims that Defendants made or caused to be made, paid and

8    continues to pay the claims that would not be paid but for Defendants' illegal

9    conduct.  The fact that the State of Montana may pay for false or fraudulent claims

10   subsequent to the filing of this action does not negate the materiality of the

11   Defendants' wrongdoing and noncompliance.  Even though many, if not most, of

12   the prescriptions for hemophilia medications are tainted by improper financial

13   inducements, some are legitimate, and the State of Montana has no practical means

14   of discerning, on a prepayment basis, which prescriptions are tainted by kickbacks

15   and which are not.  In addition, because hemophilia medications are life-saving

16   drugs, a blanket suspension of payments to the Defendants could cause substantial

17   harm—and even fatalities.

18        300.   Defendants have damaged, and continue to damage, the State of

19   Montana in a substantial amount to be determined at trial and that State of

20   Montana is entitled to three times the damages it has sustained.

21        301.   Additionally, the State of Montana is entitled to the maximum civil

22   penalty for each and every violation alleged herein.

### Count XXI

### Nevada False Claims Act

### Nev. Rev. Stat. Ann. § 357.040(1)(a)–(b), (i)

26        302.   Relator realleges and incorporates by reference the allegations

27   contained in paragraphs 1 through 139 above as though fully set forth herein.

28        303.   This is a claim for treble damages and penalties under the Nevada

-63-

**COMPLAINT**

1   False Claims Act.

2       304.   By virtue of the acts described above, Defendants knowingly

3   presented, or caused to be presented, false or fraudulent claims to the State of

4   Nevada, or political subdivisions thereof, for payment or approval.

5       305.   By virtue of the acts described above, Defendants knowingly made,

6   used, or caused to be made or used false records or statements material to false or

7   fraudulent claims.

8       306.   By virtue of the acts described above, Defendants have knowingly

9   conspired to present, or cause to be presented, false or fraudulent claims for

10  payment or approval and to make, use, or cause to be made or used, false records

11  or statements material to false or fraudulent claims, and took multiple steps

12  individually and collectively to advance and execute the objectives of that

13  conspiracy.

14      307.   The State of Nevada and its political subdivisions, unaware of the

15  falsity of the records, statements, and claims that Defendants made or caused to be

16  made, paid and continue to pay the claims that would not be paid but for

17  Defendant's illegal conduct.  The fact that the State of Nevada and its political

18  subdivisions may pay for false or fraudulent claims subsequent to the filing of this

19  action does not negate the materiality of the Defendants' wrongdoing and

20  noncompliance.  Even though many, if not most, of the prescriptions for

21  hemophilia medications are tainted by improper financial inducements, some are

22  legitimate, and the State of Nevada and its political subdivisions have no practical

23  means of discerning, on a prepayment basis, which prescriptions are tainted by

24  kickbacks and which are not.  In addition, because hemophilia medications are life-

25  saving drugs, a blanket suspension of payments to the Defendants could cause

26  substantial harm—and even fatalities.

27      308.   Defendants have damaged, and continue to damage, the State of

28  Nevada and its political subdivisions in a substantial amount to be determined at

-64-

**COMPLAINT**

trial, and the State and its political subdivisions are entitled to three times the amount of damages they have sustained.

309.   Additionally, the State of Nevada and its political subdivisions are entitled to the maximum civil penalty for each and every violation alleged herein.

## Count XXII

### New Jersey False Claims Act

### N.J. Stat. § 2A:32C-3(a)–(c)

310.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as though fully set forth herein.

311.   This is a claim for treble damages and penalties under the New Jersey False Claims Act.

312.   By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of New Jersey for payment or approval.

313.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records or statements to induce the State of New Jersey to approve and pay false or fraudulent claims.

314.   By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, cause to be made or used, false records or statements material to false or fraudulent claims, and took multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

315.   The State of New Jersey, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.  The fact that the State of New Jersey may pay for false or fraudulent claims subsequent to the filing of this action does not negate the materiality of the

1    Defendants' wrongdoing and noncompliance.  Even though many, if not most, of

2    the prescriptions for hemophilia medications are tainted by improper financial

3    inducements, some are legitimate, and the State of New Jersey has no practical

4    means of discerning, on a prepayment basis, which prescriptions are tainted by

5    kickbacks and which are not.  In addition, because hemophilia medications are life-

6    saving drugs, a blanket suspension of payments to the Defendants could cause

7    substantial harm—and even fatalities.

8        316.   Defendants have damaged, and continue to damage, the State of New

9    Jersey in a substantial amount to be determined at trial, and the State is entitled to

10   three times the damages it has sustained.

11       317.   Additionally, the State of New Jersey is entitled to the maximum

12   penalty for each and every violation alleged herein.

13                                   **Count XXIII**

14   **New Mexico Medicaid False Claims Act and New Mexico Fraud Against**
15                                **Taxpayers Act**
16   **N.M. Stat. Ann. § 27-14-4(A), (C)-(D), and N.M. Stat. Ann. § 44-9-3(A)(1)-(3)**

17       318.   Relator realleges and incorporates by reference the allegations

18   contained in paragraphs 1 through 139 above as though fully set forth herein.

19       319.   This is a claim for treble damages and penalties under the New

20   Mexico Medicaid False Claims Act and the New Mexico Fraud Against Taxpayers

21   Act.

22       320.   By virtue of the acts described above, Defendants knowingly

23   presented, or caused to be presented, false or fraudulent claims to the State of New

24   Mexico for payment or approval.

25       321.   By virtue of the acts described above, Defendants knowingly made,

26   used, or caused to be made or used false, misleading, or fraudulent records or

27   statements to induce the State of New Mexico to approve and pay false or

28   fraudulent claims.

                                      -66-
                                   **COMPLAINT**

587256.1
587256.2

322.   By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and took multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

323.   The State of New Mexico, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.  The fact that the State of New Mexico may pay for false or fraudulent claims subsequent to the filing of this action does not negate the materiality of the Defendants' wrongdoing and noncompliance.  Even though many, if not most, of the prescriptions for hemophilia medications are tainted by improper financial inducements, some are legitimate, and the State of New Mexico has no practical means of discerning, on a prepayment basis, which prescriptions are tainted by kickbacks and which are not.  In addition, because hemophilia medications are life-saving drugs, a blanket suspension of payments to the Defendants could cause substantial harm—and even fatalities.

324.   Defendants have damaged, and continue to damage, the State of New Mexico in a substantial amount to be determined at trial, and the State is entitled to three times the amount of damages it has sustained.

325.   Additionally, the State of New Mexico is entitled to the maximum penalty for each and every violation alleged herein.

## Count XXIV

## New York False Claims Act

## N.Y. State Fin. § 189(1)(a)–(c)

326.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as though fully set forth herein.

-67-

587256.1
587256.2

327. This is a claim for treble damages and penalties under the New York False Claims Act.

328. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the New York state government and local New York governments for payment or approval.

329. By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

330. By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and took multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

331. The New York state government and New York local governments, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continue to pay the claims that would not be paid but for Defendants illegal conduct. The fact that the state and local governments of New York may pay for false or fraudulent claims subsequent to the filing of this action does not negate the materiality of the Defendants' wrongdoing and noncompliance. Even though many, if not most, of the prescriptions for hemophilia medications are tainted by improper financial inducements, some are legitimate, and the state and local governments of New York have no practical means of discerning, on a prepayment basis, which prescriptions are tainted by kickbacks and which are not. In addition, because hemophilia medications are life-saving drugs, a blanket suspension of payments to the Defendants could cause substantial harm—and even fatalities.

332. Defendants have damaged, and continue to damage, the State of New

-68-

587256.1
587256.2

1   York and New York local governments in a substantial amount to be determined at

2   trial, and they are entitled to three times the damages they have sustained.

3       333.   Additionally, the New York state government and local governments

4   are entitled to the maximum civil penalty for each and every violation alleged

5   herein.

### Count XXV

### North Carolina False Claims Act

### N.C. Gen. Stat. § 1-607(a)(1)–(3)

9       334.   Relator realleges and incorporates by reference the allegations

10   contained in paragraphs 1 through 139 above as though fully set forth herein.

11       335.   This is a claim for treble damages and penalties under the North

12   Carolina False Claims Act.

13       336.   By virtue of the acts described above, Defendants knowingly

14   presented, or caused to be presented, false or fraudulent claims to the North

15   Carolina state government for payment or approval.

16       337.   By virtue of the acts described above, Defendants knowingly made,

17   used, or caused to be made or used false records or statements material to false or

18   fraudulent claims.

19       338.   By virtue of the acts described above, Defendants have knowingly

20   conspired to present, or cause to be presented, false or fraudulent claims for

21   payment or approval and to make, use, or cause to be made or used, false records

22   or statements material to false or fraudulent claims, and took multiple steps

23   individually and collectively to advance and execute the objectives of that

24   conspiracy.

25       339.   The State of North Carolina, unaware of the falsity of the records,

26   statements, and claims that Defendants made or caused to be made, paid and

27   continues to pay the claims that would not be paid but for Defendants' illegal

28   conduct. The fact that the State of North Carolina may pay for false or fraudulent

-69-

claims subsequent to the filing of this action does not negate the materiality of the Defendants' wrongdoing and noncompliance.  Even though many, if not most, of the prescriptions for hemophilia medications are tainted by improper financial inducements, some are legitimate, and the State of North Carolina has no practical means of discerning, on a prepayment basis, which prescriptions are tainted by kickbacks and which are not.  In addition, because hemophilia medications are life-saving drugs, a blanket suspension of payments to the Defendants could cause substantial harm—and even fatalities.

340.   Defendants have damaged, and continue to damage, the State of North Carolina in a substantial amount to be determined at trial, and the State is entitled to three times the damages it has sustained.

341.   Additionally, the North Carolina state government is entitled to the maximum civil penalty for each and every violation alleged herein.

### Count XXVI

### Oklahoma Medicaid False Claims Act

### Okla. Stat. tit. 63 § 5053.1(B)(1)–(3)

342.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as though fully set forth herein

343.   This is a claim for treble damages and penalties under the Oklahoma Medicaid False Claims Act.

344.   By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the Oklahoma state government for payment or approval.

345.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

346.   By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for

-70-

**COMPLAINT**

587256.1
587256.2

1  payment or approval and to make, use, or cause to be made or used, false records

2  or statements material to false or fraudulent claims, and took multiple steps

3  individually and collectively to advance and execute the objectives of that

4  conspiracy.

5      347.  The State of Oklahoma, unaware of the falsity of the records,

6  statements, and claims that Defendants made or caused to be made, paid and

7  continues to pay the claims that would not be paid but for Defendants' illegal

8  conduct.  The fact that the State of Oklahoma may pay for false or fraudulent

9  claims subsequent to the filing of this action does not negate the materiality of the

10  Defendants' wrongdoing and noncompliance.  Even though many, if not most, of

11  the prescriptions for hemophilia medications are tainted by improper financial

12  inducements, some are legitimate, and the State of Oklahoma has no practical

13  means of discerning, on a prepayment basis, which prescriptions are tainted by

14  kickbacks and which are not.  In addition, because hemophilia medications are life-

15  saving drugs, a blanket suspension of payments to the Defendants could cause

16  substantial harm—and even fatalities.

17      348.  Defendants have damaged, and continue to damage, the State of

18  Oklahoma in a substantial amount to be determined at trial, and the State is entitled

19  to three times the amount of damages it has sustained.

20      349.  Additionally, the Oklahoma state government is entitled to the

21  maximum civil penalty for each and every violation alleged herein.

22                              **Count XXVII**

23                   **Rhode Island State False Claims Act**

24                    **R.I. Gen. Laws § 9-1.1-3(a)(1)–(3)**

25      350.  Relator realleges and incorporates by reference the allegations

26  contained in paragraphs 1 through 139 above as though fully set forth herein.

27      351.  This is a claim for treble damages and penalties under the Rhode

28  Island False Claims Act.

352.   By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Rhode Island for payment or approval.

353.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

354.   By virtue of the acts described above, Defendants have knowingly conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and took multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

355.   The State of Rhode Island, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.  The fact that the State of Rhode Island may pay for false or fraudulent claims subsequent to the filing of this action does not negate the materiality of the Defendants' wrongdoing and noncompliance.  Even though many, if not most, of the prescriptions for hemophilia medications are tainted by improper financial inducements, some are legitimate, and the State of Rhode Island has no practical means of discerning, on a prepayment basis, which prescriptions are tainted by kickbacks and which are not.  In addition, because hemophilia medications are life-saving drugs, a blanket suspension of payments to the Defendants could cause substantial harm—and even fatalities.

356.   Defendants have damaged, and continue to damage, the State of Rhode Island in a substantial amount to be determined at trial, and the State is entitled to three times the amount of damages it has sustained.

357.   Additionally, the Rhode Island state government is entitled to the

-72-

587256.1
587256.2

1  maximum civil penalty for each and every violation alleged herein.

2  ## Count XXVIII

3  ### Tennessee False Claims Act and Tennessee Medicaid False Claims Act

4  ### Tenn. Code Ann. § 4-18-103(a)(1)–(3) and § 71-5-182(a)(1)(A)–(C)

5  358.   Relator realleges and incorporates by reference the allegations

6  contained in paragraphs 1 through 139 above as though fully set forth herein.

7  359.   This is a claim for treble damages and penalties under Tennessee

8  False Claims Act and Tennessee Medicaid False Claims Act.

9  360.   By virtue of the acts described above, Defendants knowingly

10  presented, or caused to be presented, false or fraudulent claims to the Tennessee

11  state government or political subdivisions thereof for payment or approval.

12  361.   By virtue of the acts described above, Defendants knowingly made,

13  used, or caused to be made or used false records or statements induce the State of

14  Tennessee or political subdivisions thereof to pay or approve false or fraudulent

15  claims.

16  362.   By virtue of the acts described above, Defendants have knowingly

17  conspired to present, or cause to be presented, false or fraudulent claims for

18  payment or approval and to make, use, or cause to be made or used, false records

19  or statements to induce the payment or approval of false or fraudulent claims, and

20  took multiple steps individually and collectively to advance and execute the

21  objectives of that conspiracy.

22  363.   The Tennessee state government and its political subdivisions,

23  unaware of the falsity of the records, statements, and claims that Defendants made

24  or caused to be made, paid and continue to pay the claims that would not be paid

25  but for Defendants' illegal conduct.  The fact that the State of Tennessee and its

26  political subdivisions may pay for false or fraudulent claims subsequent to the

27  filing of this action does not negate the materiality of the Defendants' wrongdoing

28  and noncompliance.  Even though many, if not most, of the prescriptions for

-73-

587256.1
587256.2

hemophilia medications are tainted by improper financial inducements, some are legitimate, and the State of Tennessee and its political subdivisions have no practical means of discerning, on a prepayment basis, which prescriptions are tainted by kickbacks and which are not. In addition, because hemophilia medications are life-saving drugs, a blanket suspension of payments to the Defendants could cause substantial harm—and even fatalities.

364. Defendants have damaged, and continue to damage, the State of Tennessee and its political subdivisions in a substantial amount to be determined at trial. The State and its political subdivisions are entitled to three times the amount of damages they have sustained.

365. Additionally, the State of Tennessee and its political subdivisions are entitled to the maximum civil penalty for each and every violation alleged herein.

### Count XXIX

### Texas Medicaid Fraud Prevention Act

### Tex. Hum. Res. Code Ann. § 36.002(1)-(2), (4)-(5), and (9)

366. Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as though fully set forth herein.

367. This is a claim under the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.001, et seq. for treble the amount of any Medicaid payment made as a result of an unlawful act, civil penalties, and interest on the amount of unlawfully procured payments.

368. By virtue of the acts described above, Defendants have knowingly made or caused to be made false statements or misrepresentations of material facts to permit it to receive payments from the Texas Medicaid program that were not authorized or that were greater than the payments that were authorized.

369. By virtue of the acts described above, Defendants have knowingly concealed or failed to disclose information, thus permitting it to receive payments

-74-

**COMPLAINT**

1    from the Texas Medicaid program that were not authorized or that were greater

2    than the payments that were authorized.

3        370.   By virtue of the acts described above, Defendants have knowingly

4    made or caused to be made false statements or misrepresentations of material facts

5    regarding information required to be provided by a federal or state law, rule,

6    regulation, or provider agreement pertaining to the Medicaid program.

7        371.   By virtue of the acts described above, Defendants have knowingly

8    paid, charged, solicited, accepted, or received, in addition to amounts paid under

9    the Medicaid program, gifts, money, donations, or other consideration as a

10   condition to the provision of a service or product or the continued provision of a

11   service or product, the cost of which is paid for, in whole or in part, under the

12   Medicaid program.

13       372.   By virtue of the acts described above, Defendants have knowingly

14   conspired to commit violations of Texas Medicaid Fraud Prevention Act, Tex.

15   Hum. Res. Code Ann. § 36.002(1)-(2) and (4)-(5), and took multiple steps

16   individually and collectively to advance and execute the objectives of that

17   conspiracy.

18       373.   The Texas Medicaid Fraud Prevention Act is a statute of absolute

19   liability.  There are no statutory, equitable, or common law defenses for any

20   violation of its provisions.  Furthermore, Texas case law provides that the defenses

21   of estoppel, laches, and limitations are not available against the State of Texas as a

22   sovereign. *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993).

23       374.   Under the Texas Medicaid Fraud Prevention Act, each Defendant is

24   liable to the State of Texas for the amount of any payments or the value of any

25   monetary or in-kind benefits provided under the Medicaid program, directly or

26   indirectly, as a result of its unlawful acts; two times the amount of those payments

27   or the value of the benefit; pre-judgment interest on the amount of those payments

28   or the value of the benefit; and a civil penalty for each unlawful act committed, in

1  addition to the fees, expenses, and costs of the Attorney General and the Relator in

2  investigating and obtaining civil remedies in this case.  Tex. Hum. Res. Code §§

3  36.052, 36.007, 36.110(c).

4  ### Count XXX

5  ### Vermont False Claims Act

6  ### Vt. Stat. Ann. tit. 32, § 631(a)(1)-(3), (12)

7      375.   Relator realleges and incorporates by reference the allegations

8  contained in paragraphs 1 through 139 above as though fully set forth herein.

9      376.   This is a claim for treble damages and penalties under the Vermont

10  False Claims Act.

11      377.   By virtue of the acts described above, Defendants knowingly

12  presented, or caused to be presented, false or fraudulent claims to the Vermont

13  state government for payment or approval.

14      378.   By virtue of the acts described above, Defendants knowingly made,

15  used, or caused to be made or used false records or statements material to false or

16  fraudulent claims.

17      379.   By virtue of the acts described above, Defendants have knowingly

18  conspired to present, or cause to be presented, false or fraudulent claims for

19  payment or approval and to make, use, or cause to be made or used, false records

20  or statements material to false or fraudulent claims, and took multiple steps

21  individually and collectively to advance and execute the objectives of that

22  conspiracy.

23      380.   The State of Vermont, unaware of the falsity of the records,

24  statements, and claims that Defendants made or caused to be made, paid and

25  continues to pay the claims that would not be paid but for Defendants' illegal

26  conduct.  The fact that the State of Vermont may pay for false or fraudulent claims

27  subsequent to the filing of this action does not negate the materiality of the

28  Defendants' wrongdoing and noncompliance.  Even though many, if not most, of

-76-

1   the prescriptions for hemophilia medications are tainted by improper financial

2   inducements, some are legitimate, and the State of Vermont has no practical means

3   of discerning, on a prepayment basis, which prescriptions are tainted by kickbacks

4   and which are not.  In addition, because hemophilia medications are life-saving

5   drugs, a blanket suspension of payments to the Defendants could cause substantial

6   harm—and even fatalities.

7       381.   Defendants have damaged, and continue to damage, the State of

8   Vermont in a substantial amount to be determined at trial, and the State is entitled

9   to three times the damages it has sustained.

10       382.   Additionally, the State of Vermont is entitled to the civil maximum

11   penalty for each and every violation alleged herein.

### Count XXXI

### Virginia Fraud Against Taxpayers Act

### Va. Code Ann. § 8.01-216.3(A)(1)-(3)

    383.   Relator realleges and incorporates by reference the allegations
contained in paragraphs 1 through 139 above as though fully set forth herein.

    384.   This is a claim for treble damages and penalties under the Virginia
Fraud Against Taxpayers Act.

    385.   By virtue of the acts described above, Defendants knowingly
presented or caused to be presented, false or fraudulent claims for payment or
approval.

    386.   By virtue of the acts described above, Defendants knowingly made,
used, or caused to be made or used, false records or statements material to a false
or fraudulent claim.

    387.   By virtue of the acts described above, Defendants have knowingly
conspired to present, or cause to be presented, false or fraudulent claims for
payment or approval and to make, use, or cause to be made or used, false records

-77-

**COMPLAINT**

587256.1
587256.2

1   or statements material to false or fraudulent claims, and took multiple steps

2   individually and collectively to advance and execute the objectives of that

3   conspiracy.

4      388.   The Commonwealth of Virginia, unaware of the falsity of the records,

5   statements, and claims made, used, presented, or caused to be made, used, or

6   presented by Defendants, paid and continues to pay the claims that would not be

7   paid but for Defendants' unlawful conduct. The fact that the Commonwealth of

8   Virginia may pay for false or fraudulent claims subsequent to the filing of this

9   action does not negate the materiality of the Defendants' wrongdoing and

10  noncompliance.  Even though many, if not most, of the prescriptions for

11  hemophilia medications are tainted by improper financial inducements, some are

12  legitimate, and the Commonwealth of Virginia has no practical means of

13  discerning, on a prepayment basis, which prescriptions are tainted by kickbacks

14  and which are not.  In addition, because hemophilia medications are life-saving

15  drugs, a blanket suspension of payments to the Defendants could cause substantial

16  harm—and even fatalities.

17     389.   By reason of Defendants' acts, the Commonwealth of Virginia has

18  been damaged, and continues to be damaged, in a substantial amount to be

19  determined at trial, and is entitled to three times the amount of damages it has

20  sustained.

21     390.   Additionally, the Commonwealth of Virginia is entitled to the

22  maximum penalty for each and every violation alleged herein.

### Count XXXII

### Washington State Medicaid Fraud False Claims Act

### Wash. Rev. Code § 74.66.020(1)(a)–(c)

26     391.   Relator realleges and incorporates by reference the allegations

27  contained in paragraphs 1 through 139 above as though fully set forth herein.

28     392.   This is a claim for treble damages and penalties under the Washington

-78-

1  State Medicaid Fraud False Claims Act.

2      393.  By virtue of the acts described above, Defendants knowingly

3  presented, or caused to be presented, false or fraudulent claims to the State of

4  Washington for payment or approval.

5      394.  By virtue of the acts described above, Defendants knowingly made,

6  used, or caused to be made or used false records or statements material to false or

7  fraudulent claims.

8      395.  By virtue of the acts described above, Defendants have knowingly

9  conspired to present, or cause to be presented, false or fraudulent claims for

10  payment or approval and to make, use, or cause to be made or used, false records

11  or statements material to false or fraudulent claims, and took multiple steps

12  individually and collectively to advance and execute the objectives of that

13  conspiracy.

14      396.  The State of Washington, unaware of the falsity of the records,

15  statements, and claims that Defendants made or caused to be made, paid and

16  continues to pay the claims that would not be paid but for Defendants' illegal

17  conduct.  The fact that the State of Washington may pay for false or fraudulent

18  claims subsequent to the filing of this action does not negate the materiality of the

19  Defendants' wrongdoing and noncompliance.  Even though many, if not most, of

20  the prescriptions for hemophilia medications are tainted by improper financial

21  inducements, some are legitimate, and the State of Washington has no practical

22  means of discerning, on a prepayment basis, which prescriptions are tainted by

23  kickbacks and which are not.  In addition, because hemophilia medications are life-

24  saving drugs, a blanket suspension of payments to the Defendants could cause

25  substantial harm—and even fatalities.

26      397.  Defendants have damaged, and continue to damage, the State of

27  Washington in a substantial amount to be determined at trial, and the State is

28  entitled to three times the amount of damages it has sustained.

**COMPLAINT**

587256.1
587256.2

1    398.   Additionally, the State of Washington is entitled to the maximum civil

2    penalty for each and every violation alleged herein.

3    **Count XXXIII**

4    **Chicago False Claims Act**

5    **Municipal Code § 1-22-020(1)-(3)**

6    399.   Relator realleges and incorporates by reference the allegations

7    contained in paragraphs 1 through 139 above as though fully set forth herein.

8    400.   This is a claim for treble damages and penalties under the Chicago

9    False Claims Act.

10   401.   By virtue of the acts described above, Defendants knowingly

11   presented, or caused to be presented, false or fraudulent claims for payment to the

12   City of Chicago.

13   402.   By virtue of the acts described above, Defendants knowingly made,

14   used, or caused to be made or used false records or statements to induce the City of

15   Chicago to approve and pay such false or fraudulent claims.

16   403.   By virtue of the acts described above, Defendants have knowingly

17   conspired to present, or cause to be presented, false or fraudulent claims for

18   payment or approval and to make, use, or cause to be made or used, false records

19   or statements material to false or fraudulent claims, and took multiple steps

20   individually and collectively to advance and execute the objectives of that

21   conspiracy.

22   404.   Defendants have damaged, and continue to damage, the City of

23   Chicago in a substantial amount to be determined at trial, and the City is entitled to

24   three times the amount of damages it has sustained.

25   405.   Additionally, the City of Chicago is entitled to the maximum civil

26   penalty for each and every violation alleged herein.

27   ///

28   ///

**COMPLAINT**

587256.1
587256.2

I.    **PRAYER**

1.    WHEREFORE, plaintiff prays for judgment against Defendant as follows:

2.    That Defendants cease and desist from violating 31 U.S.C. § 3729(a)(1)(A)-(C);

3.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $11,181 and not more than $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each violation of 31 U.S.C. § 3729;

4.    That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the Federal False Claims Act;

5.    That Defendants cease and desist from violating the District of Columbia False Claims Act, D.C. Code Ann. § 2-381.02(a)(1)-(2), (7); California False Claims Act, Cal. Gov't Code § 12651(a)(1)–(3); California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7; Colorado Medicaid False Claims Act, Colo. Rev. Stat. § 25.5-4-305(1)(a)-(b), (g); Connecticut False Claims Act, Conn. Gen. Stat. § 4-275(1)-(3); Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201(a)(1)-(3); Florida False Claims Act, Fla. Stat. Ann. § 68.082(2)(a)-(c); Georgia Taxpayer Protection Against False Claims Act, Ga. Code Ann. §§ 23-3-121(a)(1)-(3); Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168.1(1)-(3); Hawaii False Claims Act, Haw. Rev. Stat. § 661-21(a)(1)-(2), (8); Illinois False Claims Act, 740 Ill. Comp. Stat.  175/3(a)(1)(A)-(C); Illinois Insurance Claims Fraud Prevention Act, 740 Ill. Comp. Stat. 92; Indiana False Claims and Whistleblower Protection Act, Ind. Code Ann. § 5-11-5.5-2(b)(1)-(2), (7); Indiana Medicaid False Claims and Whistleblower Protection Act, Ind. Code Ann. § 5-11-5.7-2(a)(1)-(2), (7); Iowa False Claims Act, Iowa Code § 685.2(1)(a)-(c); Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §

-81-

**COMPLAINT**

1   46:438.3(A)-(B), (D); Maryland False Claims Act, Md. Gen. Provis. § 8-102(b)(1)-

2   (3); Maryland False Health Claims Act, Md. Code Ann., Health-Gen. § 2-

3   602(a)(1)-(3); Massachusetts False Claims Law, Mass. Gen. Laws ch. 12 §

4   5B(a)(1)-(3); Michigan Medicaid False Claim Act, Mich. Comp. Laws §§

5   400.607(1)-(3), 400.606(1), 400.604; Minnesota False Claims Act, Minn. Stat. §

6   15C.02(a)(1)-(3); Montana False Claims Act, Mont. Code Ann. § 17-8-403(1)(a)–

7   (c); Nevada False Claims Act, Nev. Rev. Stat. Ann. § 357.040(1)(a)-(b), (i); New

8   Jersey False Claims Act, N.J. Stat. § 2A:32C-3(a)–(c); New Mexico Medicaid

9   False Claims Act and New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann.

10  § 27-14-4(A), (C)-(D) and § 44-9-3(A)(1)-(3); New York False Claims Act, N.Y.

11  State Fin. § 189(1)(a)–(c); North Carolina Medicaid False Claims Statute, N.C.

12  Gen. Stat. § 1-607(a)(1)–(3); Oklahoma Medicaid False Claims Act, Okla. Stat. tit.

13  63 § 5053.1(B)(1)–(3); Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-

14  3(a)(1)-(3); Tennessee False Claims Act and Tennessee Medicaid False Claims

15  Act, Tenn. Code Ann. § 4-18-103(a)(1)–(3) and § 71-5-182(a)(1)(A)–(C); Texas

16  Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.002(1)-(2), (4)-

17  (5), and (9); Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 631(a)(1)-(3), (12);

18  Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(1)-(3);

19  Washington State Medicaid Fraud False Claims Act, Wash. Rev. Code §

20  74.66.020(1)(a)-(c); and the Chicago False Claims Ordinance, Municipal Code § 1-

21  22-020(1)-(3).

22      6.   That this Court enter judgment against Defendants for damages and

23  penalties under the California False Claims Act, Cal. Gov't Code §§ 12650 et seq.;

24  the California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7; the

25  Colorado Medicaid False Claims Act, Colo. Rev. Stat. §§ 25.5-4-303.5, et seq.; the

26  Connecticut False Claims Act, Conn. Gen. Stat. §§ 4-274 et seq.; the Delaware

27  False Claims and Reporting Act, Del. Code. Ann. tit. 6 §§ 1201 et seq.; the District

28  of Columbia False Claims Act, D.C. Code Ann. §§ 2-381.01 et seq.; the Florida

**COMPLAINT**

1    False Claims Act, Fla. Stat. Ann. §§ 68.081 et seq.; the Georgia Taxpayer

2    Protection Against False Claims Act, Ga. Code Ann. §§ 23-3-120 et seq.; the

3    Georgia False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168 et seq.; the

4    Hawaii False Claims Act, Haw. Rev. Stat. §§ 661-21 et seq.; the Illinois False

5    Claims Act, 740 Ill. Comp. Stat. 175/1 et seq.; the Illinois Insurance Claims Fraud

6    Prevention Act, 740 Ill. Comp. Stat. 92/1 et seq.; the Indiana False Claims and

7    Whistleblower Protection Act, Ind. Code Ann. §§ 5-11-5.5 et seq.; the Indiana

8    Medicaid False Claims and Whistleblower Protection Act, Ind. Code Ann. §§ 5-

9    11-5.7 et seq.; the Iowa False Claims Act, Iowa Code §§ 685 et seq.; the Louisiana

10   Medical Assistance Programs Integrity Law, La. Rev. Stat. §§ 46:438 et seq.; the

11   Maryland False Claims Act, Md. Gen. Provis. §§ 8-101 et seq.; the Maryland False

12   Health Claims Act, Md. Code Ann., Health-Gen. §§ 2-601 et seq.; the

13   Massachusetts False Claims Law, Mass. Gen. Laws ch. 12 §§ 5 et seq.; the

14   Michigan Medicaid False Claims Act, Mich. Comp. Laws §§ 400.601 et seq.; the

15   Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq.; the Montana False

16   Claims Act, Mont. Code Ann. §§ 17-8-401 et seq.; the Nevada False Claims Act,

17   Nev. Rev. Stat. Ann. §§ 357.010 et seq.; the New Jersey False Claims Act, N.J.

18   Stat. §§ 2A:32C-1 et seq.; the New Mexico Medicaid False Claims Act and New

19   Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §§ 27-14-1 et seq. and §§

20   44-9-3 et seq.; the New York False Claims Act, N.Y. State Fin. §§ 187 et seq.; the

21   North Carolina False Claims Act, NC Gen. Stat. §§ 1-605 et seq.; the Oklahoma

22   Medicaid False Claims Act, Okla. Stat. tit. 63 §§ 5053 et seq.; the Rhode Island

23   False Claims Act, R.I. Gen. Laws §§ 9-1.1 et seq.; the Tennessee False Claims Act

24   and the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 4-18-103 et

25   seq. and §§ 71-5-181 et seq.; the Texas Medicaid Fraud Prevention Act, Tex. Hum.

26   Res. Code Ann. §§ 36.001 et seq.; the Virginia Fraud Against Taxpayers Act, Va.

27   Code Ann. §§ 8.01-216.1 et seq.; the Washington State Medicaid Fraud False

28   Claims Act, Wash. Rev. Code §§ 74.66.005 et seq.; and the Chicago False Claims

1   Act, Municipal Code §§ 1-22-010 et seq.

2       7.    That Relator be awarded all costs of this action, including attorneys'

3   fees and expenses; and

4       8.    That the United States, the States, the Municipalities, and Plaintiff-

5   Relator recover such other and further relief as the Court deems just and proper.

6   **REQUEST FOR TRIAL BY JURY**

7       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby

8   demands a trial by jury.

9

10   Dated: October 31, 2018        Respectfully submitted,

11

12

13   ERIKA A. KELTON (SBN 133300)
14     ekelton@phillipsandcohen.com
     PHILLIPS & COHEN LLP
15   100 The Embarcadero, Suite 300
     San Francisco, CA 94105
16   Tel: (415) 836-9000
     Fax: (415) 836-9001
17
     Attorney for *Qui Tam* Plaintiff
18   MATTHEW WEBSTER

19

20

21

22

23

24

25

26

27

28

-84-

**COMPLAINT**

587256.1
587256.2